**DIFFENBACHER, Plaintiff-Appellee, v LAKE SHORE COACH CO., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20914.   Decided June 1, 1948.

A. H. Dudnik, Cleveland, for plaintiff-appellee.
Duncan & Thomas, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J.

This cause comes to this court on questions of law from a judgment for the plaintiff in the court of common pleas.

The plaintiff had been driving his automobile in an easterly direction on Clifton Boulevard on September 22, 1944 at about 7:30 A. M. He had entered Clifton Boulevard from Nicholson Avenue. The traffic light at the intersection of Nicholson Avenue and Clifton Boulevard had just changed for Nicholson Avenue traffic as plaintiff approached so that he entered without stopping and turned east. He stopped at the next intersection (Donald Avenue) to pick up a friend who was standing there waiting to be driven downtown. It is 737 feet from Nicholson Avenue to Donald Avenue. As plaintiff started up after picking up his friend, he noticed that traffic on Clifton Boulevard was still waiting at the traffic light at Nicholson Avenue. He drove toward the curb of the Boulevard because he desired to turn left at Cove Avenue. It is 1388 feet from Donald Avenue to Cove Avenue.

At Thoreau Road, which is 337 feet east of Donald Avenue, the plaintiff lowered his window next to him and held his hand out to signal a left hand turn. After holding out while travelling about 800 feet, he withdrew his arm and closed the window. At this time he testified he was driving astride the center line, there being no traffic approaching from the east.

At a point about 420 feet from Cove Avenue he was struck from the rear by the defendant's bus. The plaintiff testified:

"Q. Was it a terrific impact?
A. Yes.
Q. What happened to you and your car?
A. The car seemed to shoot forward and then it was dragged around or skidded around, the rear end, suddenly."

The evidence also shows that Clifton Boulevard is 36 feet wide from curb to curb. The plaintiff produced two witnesses who testified that for some 800 feet previous to the accident, the bus was blowing its horn and was being driven close to the north curb. One of plaintiff's witnesses testified he was standing in the rear of the bus and it got so close to the north curb that looking down from his standing position he could not see the curb. The bus driver described the accident as follows:

"A. I start try to go by the car and I sounded the horn

to pass him. Instead of him going to the right which he should have done—* * * and I kept trying to go by him. I figured all the time he was going to pull over for me to go by, which he did not do. He kept coming to the left crowding me over the center line over as far as I could go. All of the sudden, after blowing the horn several times, why he cuts right over in front of me and caught his right—his left rear of his car and right front of my bus, threw the car into a spin. Pulled by bus over to the side about a bus length away and all the passengers and myself got out and helped him out of his car."

Upon the impact of the two vehicles, the plaintiff's automobile went forward a short distance and then swerved left over to the street car tracks, sideswiped a trolley pole on the right and touched a tree on the left side and then the automobile turned over on its right side. The plaintiff testified he lost consciousness momentarily and felt dazed. He managed to get out and tried to assist his passengers. He went to the hospital and after some treatment remained there until he could get a report on the condition of two of his passengers and then went home. He returned to work on Saturday for a half day as was also true on Monday. He testified that he was compelled to stay away from work some time each week for a number of months.

It was disclosed by the evidence that there were 53 passengers on the bus. Two of them were called to testify for plaintiff and two were witnesses on behalf of defendant. The record also discloses that in the presence of the jury counsel stated "because they have got 53 passengers in this bus I am going to ask why 53 passengers are not here, only 3."

Prior to the trial of the case the defendant requested the plaintiff to submit to a medical examination, which request was granted and Dr. Edson Brown conducted a physical examination of him.

Upon trial, the defendant introduced four medical reports made by the doctor of The New York Central Railroad, plaintiff's employer, which reports resulted from the plaintiff's regular yearly medical check-up required by the railroad. Two of these reports were made prior to the accident here under consideration and two were conducted after such accident. The two examinations made after the accident are almost identical with those made Sept. 22, 1944 and fail to show any physical disability. These reports are dated May 17, 1945 and July 3, 1946, respectively.

The defendants did not call Dr. Brown as a witness. The court after it concluded its charge was requested to give the following additional charge at the request of the plaintiff, to which the defendant entered an exception:

"Ladies and gentlement of the jury: If you should find that either side could have presented a witness and had the ability to present such a witness and did not, in the absence of explanation you have a right to draw an inference that such witness would have testified adversely to the side that did not present it."

The jury returned a verdict for plaintiff. Defendant in this appeal assigns the following claims of error:

"1. The court of common pleas erred in telling the jury that if they should find that either side could have presented a witness and had the ability to present such witness and did not, in the absence of explanation they had a right to draw an inference that such witness would have testified adversely to the side that did not present it.

2. The common pleas court erred in its general charge to the jury.

3. The common pleas court erred in failing to instruct the jury in writing before argument as requested by the defendant."

The first claim of error that the charge of the court to the effect that the failure to call a witness without explanation gave the jury the right to infer that such witness's testimony would be unfavorable, is well taken. The charge as given, constituted prejudicial error. The courts have long recognized the rule that under some circumstances the failure to call a material witness may be the subject of comment but the charge as given goes far beyond the rule. In included every possible witness, regardless of whether or not the witness's testimony would be material to the issues as claimed by the party, whether or not such testimony of such witness would be the best evidence or would be cumulative or otherwise.

In Wigmore on Evidence, 3rd Edition, Vol. 2, parag. 287, in developing the limitation to which the rule permitting counsel to comment on the absence of a witness whom the opposing side had failed to call when because of the circumstances surrounding such witness in relation to the case he would naturally be produced by such party, unless the facts known to him were unfavorable to such party who failed to call

him, in addition to the first limitation dealt with in paragraph 286 that the witness must have been available or within the power of the party to produce him, the author says at page 168:

"Furthermore, it seems plain that the possible witness whose testimony is for any reason comparatively **unimportant** or **cumulative** or **inferior,** to what is already utilized, might well be dispensed with by a party on general grounds of expense and inconvenience, without any apprehension as to the tenor to their testimony. In other words, put somewhat more strongly, there is a general limitation (depending for its application on the facts of each case) that the inference cannot fairly be drawn except from the non-production of witnesses whose testimony be **superior** in respect to the fact to be proved. This limitation should not be enforced with any strictures; otherwise it would become practically objectionable; but on principle it is sound and has often been recognized."

In Carter v Chambers, 79 Ala. 223 "(disapproving a charge that 'if a party has a witness within his power to produce and fails to produce him the presumption is fair that the witness if produced would not support the right of the party') the court said:

"carried to its extent it would require of a suitor that he should produce all the witnesses no matter how numerous they might be, who knew anything of the transaction * * * There is a rule and a just one, that if a party has a witness possessing a peculiar knowledge of the transaction and supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is ground of suspicion that such better-informed testimony would make against him."

In 135 A. L. R. 1376, the rule is stated as follows:

"The weight of authority supports the general rule that the failure of a party to introduce an available witness does not give rise to any presumption or inference that the testimoney of the witness, if he had been called, would have been unfavorable to such party, where other qualified witnesses have testified for the party concerning the same matters, and the testimony of the uncalled witness would have been merely cumulative or corroborative."

In the case of Patten v Rambi, 20 Ala. 488, two physicians had examined a slave whose soundness was in issue, and only one was called as a witness. The court held that the failure to call the other physician was not ground for inference without a showing that the testimony would have been more valuable.

The medical evidence produced by defendant being the result of an independent medical examination, in no way connected with preparing the evidence for the trial of the case, was not subject to the same arguments as to reliability as could be directed against the testimony of an expert hired for that purpose only and not for purposes of treatment. From that standpoint it was superior to the evidence of an expert hired only for the purpose of the law suit from the defendant's point of view. The testimony of Doctor Brown would also be cumulative in character. Further, there is no evidence in the record that Dr. Brown was available on the day of trial. Likewise the plaintiff had full knowledge of Dr. Brown having been examined by him and if his report would have been favorable to the plaintiff and he was in fact available, the plaintiff could have called him.

The plaintiff in support of the court's charge on the inference that may be indulged in because of the absence of a witness, refers in his brief to a brief statement on the subject in 39 O. Jur. page 704 wherein the author says:

"But the fact that a party to an action fails to call a witness who, under the circumstances of the case, would naturally be a witness in his behalf, may be commented on by opposing counsel."

This statement of the rule is not as far-reaching as the court's charge, the court having failed to include therein "who would naturally be a witness in his behalf." The authority cited in support of the text in Ohio Jurisprudence is the case of State v Champion, 109 Oh St 281. The facts in that case are clearly distinguishable from those in the case now being considered. There the defendant was on trial for murder in the first degree. Three witnesses who were present at the scene of the homicide were not called or their absence accounted for. The court at page 289 of the opinion says:

"As to the absence of the defendant's husband and Mr. and Mrs. Williams, who were present at the scene of the homicide and the absence as well of any depositions from them that may properly be the subject of comment by counsel

for the state, unless their absence be reasonably accounted for by the defendant."

In the Champion case the persons not called were important fact witnesses available to the defendant whose absence is unexplained, an entirely different circumstance than is herein presented.

It would be a needless task to attempt to reconcile the many authorities that have been cited in support of or against the defendant's claim that that part of the court's charge drawn in question by defendant's first assignment of error constituted prejudicial error. To be sure, there is much conflict in the cases but search has failed to disclose a single case which will support the all-inclusive character of the charge here under consideration and the fact that the court made the rule given in the charge applicable to both parties does not make it less objectionable. Particularly is this true where there is no evidentiary basis shown by the record which would have warranted the trial court in giving said instruction.

We hold, therefore, that the giving of the charge to the jury as set forth in the first specification of error constituted prejudicial error.

We have examined the second assignment of error concerning a part of the court's general charge which was as follows:

"And so, ladies and gentlemen of the jury, if you find by a preponderance of the evidence, that the defendant by and through its agent and employee, the bus driver, was negligent in any one or more of the particulars set out in the petition, in that in the operation of its motor coach bus it failed to maintain a look-out for vehicular traffic upon said highway and more particularly operate its motor coach vehicle under control; in that it operated its motor coach at an excessive rate of speed to-wit, in excess of 40 miles an hour; in that it operated its motor coach on the left hand or northerly side of said highway which was the wrong side of the road; in that it operated its motor coach vehicle at such an excessive rate of speed, to-wit, in excess of 40 miles an hour that it was unable to bring the same to a stop within the assured clear distance ahead; in that it failed to pass plaintiff's vehicle to the left thereof; in that when it saw, or in the exercise of ordinary care should have seen the vehicle in which plaintiff was seated, nevertheless, operated its motor coach bus into plaintiff's automobile; in that it operated its motor coach vehicle which was then and there being operated on Clifton

Boulevard; and you also find that such negligence was the direct and proximate cause of the accident and you further find that the plaintiff himself was not negligent, to any degree what ever, which proximately contributed to the accident, you would be warranted in bringing a verdict for the plaintiff, James A. Diffenbacher, in the amount the evidence, by a preponderance of all the evidence, shows that he is entitled to receive as a direct and proximate cause of the accident."

The defendant entered a general exception to the charge at the conclusion of the charge.

It is the claim of the defendant that the court in saying that if the jury found by a preponderance of the evidence that the defendant operated its motor coach at an excessive rate of speed, to-wit, **in excess of 40 miles an hour,** and on the left hand or northerly side of said highway, **which was on the wrong side of the road,** that the court thereby invaded the province of the jury in making statements of fact rather than instructing upon the law. We do not believe that the charge as given is subject to this claim of error and such claim is therefore overruled.

The third and last claim of error has to do with the refusal of the court to give to the jury a written instruction before argument as requested by the defendant. The instruction requested was as follows:

"If you find that there was no line of traffic to the right of the automobile of the plaintiff, James A. Diffenbacher, and that he received an audible signal from the overtaking bus, you are instructed that he was required to give way to the right in favor of the bus on receiving such signal, and not to increase the speed of his automobile until completely passed by the overtaking bus."

**Sec. 6307-27 GC** provides:

"The following rules shall govern the overtaking and passing of vehicles or trackless trolleys proceeding in the same direction, subject to those limitations, exceptions and special rules hereinafter stated:

(a) The operator of a vehicle or trackless trolley overtaking another vehicle or trackless trolley proceeding in the same direction shall signal to the vehicle or trackless trolley to be overtaken and shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle or trackless trolley.

(b)   Except when overtaking and passing on the right is permitted, the operator of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

Sec. 6307-28 GC provides:

(a)   "The operator of a vehicle or trackless trolley may overtake and pass upon the right of another vehicle or trackless trolley which is making or about to make a left turn.

(b)   The operator of a vehicle or trackless trolley may overtake and allowing sufficient clearance, pass another vehicle or trackless trolley proceeding in the same direction either upon the left or upon the right on a roadway, with unobstructed pavement of sufficient width whenever such roadway has been divided into four or more clearly marked lanes for moving traffic or whenever within municipalities traffic is moving in two or more substantially continuous lanes in the same direction, provided such movement can be made in safety.  No person shall drive off the pavement or upon the shoulder of the roadway in overtaking or passing on the right."

The record discloses that the point of the collision was, by the plaintiff's own testimony, 420 feet west of the point where he said he was going to make a left-hand turn.  The plaintiff also testified there was no traffic to his right at the time of the collision and two of his witnesses testified that the bus driver had been signalling his intention to pass for over a block.  The position of the vehicles at the time of the collision has been heretofore referred to.  Under the evidence in the case the defendant was, as a matter of law, entitled to have the request to charge granted and the charge given.  The refusal to give such instruction constituted prejudicial error.

For the foregoing reasons the judgment of the common pleas court is reversed and the cause is remanded for further proceedings according to law. Exceptions.  Order See Journal.

HURD, PJ, concurs and MORGAN, J, dissents.