SILVEOUS ET AL., APPELLEES, *v.* RENSCH, A MINOR, ET AL., APPELLANTS.

[Cite as Silveous v. Rensch, 20 Ohio St. 2d 82.]

(No. 68-567—Decided December 3, 1969.)

*Messrs. Tyack & Scott* and *Mr. George E. Tyack,* for appellees.

*Messrs. Kennedy, Kennedy & Purdy* and *Mr. Edward R. Wead,* for appellants.

DUNCAN, J. Defendants claim that the special charge given by the trial court was proper and that the Court of

Appeals erred. We find the charge given under these circumstances is prejudicial error.

Defendants direct the court's attention to authorities to the effect that an adverse inference may arise where a party fails, without satisfactory explanation, to call a witness where the existence of the witness is known to and is in the control of the litigant whose interest would naturally be served by his production. *Llewellyn v. Cincinnati Street Ry. Co.*, 66 Ohio App. 107; *Hubbard v. Cleveland, Columbus & Cincinnati Highway*, 81 Ohio App. 445.

This category of special instruction has its origin in the theory that the failure to produce evidence which a fearless claimant would naturally produce permits the inference that the tenor of the evidence would be unfavorable to such claimant. See Wigmore on Evidence (3 Ed.), Sections 285-286.

Neither the controverted instruction given in the case at bar, nor any part of the court's instructions, advised the jury regarding guidelines to be observed in determining the application of the word "naturally" as used in the instruction. Ordinarily, it could not be said that such a claimant would "naturally" call a witness whose testimony would be merely cumulative or inferior to that offered by other witnesses. If there is adequate relevant evidence on a particular issue, any additional evidence on that issue complained of as being absent is only cumulative, and its character as plaintiff's "natural" evidence is palled. To allow an unfavorable inference to be drawn from the nonproductivity of such evidence would serve to emasculate the historical basis for allowing the instruction.

Counsel, in argument and in their briefs, have focused on Dr. Deffinger as the object of the instruction because he was not produced at trial. In view of the introduction of evidence from the summary sheet of the hospital records that Dr. Deffinger diagnosed plaintiff's condition as a sprain of the neck and lacerations, it is unfair to allow the jury, by instruction, an opportunity to infer that plaintiff would *naturally* call the doctor, and to also infer that his testimony would have been unfavorable to his patient,

There is nothing in the record from which the court or jury could have found that Dr. Deffinger's testimony would not be inferior, cumulative or evidence which plaintiff would naturally produce. See *Diffenbacher* v. *Lake Shore Coach Co.*, 51 Ohio Law Abs. 481.

The history of litigation involving medical expert witnesses has evolved a number of empirical reasons, in addition to those stated above, for not allowing a jury to be instructed to draw unfavorable inferences from the failure to produce an attending physician. In *Merrill* v. *St. Paul City Ry. Co.*, 170 Minn. 332, 336, 212 N. W. 533, it was stated:

"* * * Many doctors are called to attend injured persons in the first instance ex necessitate, and with no opportunity for choice. The relation of physician and patient is delicate. Embarrassment sometimes follows a change of doctors. The doctor first called may not have the same opinion as to diagnosis or treatment as some other doctor. The patient makes his own choice as to whose opinion or judgment he will follow. Because one physician commands large compensation for expert testimony a patient may find it necessary to get along with one whose charges are more moderate. It is also well known that some doctors abhor the courtroom and the witness stand. A doctor is not in the control of the patient who is a litigant. Any litigant should have the right to choose his experts. He has to pay them. Because doctors disagree should he be required to furnish expert testimony of each or be subjected to an unfavorable presumption in the eyes of the jury? If the doctor is to be forced upon the plaintiff as to the mere facts, why not every eyewitness to the accident? True, the privileged character of the witness may prevent the other side calling him. But they will not anyway if he maintains that silence which the proprieties of his profession dictate. Nor would the ordinary doctor desire to become a witness against his patient. In this age when the family doctor with his helpful personal contact is disappearing and many doctors are members of clinics, it is not always possible to have the services of the particular doctor you may desire. The organiza-

tion assigns the patient to an expert of its own choice and doubtless feels that it is giving service. And why not? If the patient has the attention of a number of doctors of the same clinic, under the rule for which appellant contends each must be called or this instruction be invoked. * * *''

In view of what we have stated hereinabove, we believe that the special instruction involved unfairly serves judicially to encroach upon the inference drawing aspect of the fact-finding process.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

MATTHIAS, O'NEILL, SCHNEIDER and HERBERT, JJ., concur.

TAFT, C. J., dissents from paragraph one of the syllabus and from the judgment.

CORRIGAN, J., dissents.