[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Sylvania Municipal Court which, following a jury trial, found appellant, Michael Fitch, guilty of driving while under the influence and speeding. Appellant sets forth the following assignments of error:
"First Assignment of Error
 "THE TRIAL COURT ERRED IN REFUSING TO GIVE AN INSTRUCTION THAT WHEN AN AVAILABLE WITNESS DOES NOT TESTIFY, AND NO SATISFACTORY EXPLANATION IS OFFERED, THE JURY MAY INFER THAT THE WITNESS'S TESTIMONY WOULD BE UNFAVORABLE TO THE PARTY WHOSE INTEREST WOULD NATURALLY BE IN CALLING THAT WITNESS.
"Second Assignment of Error
 "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
The following facts are relevant to this appeal. At just after midnight on the morning of July 19, 1996, a state highway patrol officer observed a vehicle pass another vehicle at an excessive speed. This officer then activated his radar to check the speed and found that the vehicle was traveling at sixty-nine m.p.h. in a posted fifty-five m.p.h. area. The officer stopped this vehicle; appellant was the driver. While talking to appellant and asking for his driver's license and registration, the officer noticed that appellant's eyes were glassy and bloodshot, that appellant's speech was really slowed down and that a strong odor of an alcoholic beverage came from inside appellant's vehicle in which he was the only occupant. The officer testified that appellant fumbled around while finding his registration. The officer asked appellant to step outside the vehicle to perform roadside sobriety tests but appellant would not exit the vehicle. Appellant admitted that he had been drinking; he told the officer he had one beer. Appellant asked the officer to give him his speeding ticket and let him go home. The officer asked appellant to exit the vehicle several more times before calling for another officer's assistance. After the second officer arrived and the first officer explained that appellant would not exit the vehicle to take the sobriety tests, both officers approached appellant's vehicle. The second officer opened the door of appellant's vehicle and attempted to remove appellant from the vehicle. Appellant then agreed to exit the vehicle. However, appellant again refused to perform the field sobriety tests. Appellant was taken to jail.
A trial was held on July 1, 1997. The arresting highway patrol officer testified and provided the above detailed information. Appellant's friend, with whom appellant had dinner and drank that evening, testified that appellant had no more than three beers that evening. Appellant's friend testified that appellant was not intoxicated although on cross-examination appellant's friend admitted that he had no training in alcohol detection and was neither a medical doctor or a toxicologist. Appellant's friend also admitted that alcohol affects people differently based upon what they have had to eat, how tired they are and if they have been in the sun all day. Appellant's friend testified that because of the type of work they do, construction, he and appellant work very hard so that they are tired after work every day.
Appellant's originally retained attorney also testified.[1] This attorney testified that he received a call from appellant at approximately one in the morning after appellant had been arrested. This call woke him up. This attorney testified that he found appellant to be coherent and his speech clear. This attorney stated he advised appellant to submit to a breath test. On cross-examination, his attorney admitted that he did not know appellant well and would not recognize his voice unless appellant identified himself. Appellant testified that he worked in construction and that he had three beers and a sandwich between 8:30 p.m. and 11:45 p.m. On cross-examination, appellant could not recall if he had lunch that day. He denied consuming any other alcoholic beverages that evening. He stated that he declined to get out of his car and take the field sobriety tests and asked the officer to give him the ticket. On cross-examination, appellant testified that he had heard horror stories about taking field sobriety tests, such as saying the alphabet backwards, and that he knew he did not have to take the field sobriety tests. Appellant admitted that the officer told him that if appellant did not take the field sobriety tests that appellant would be arrested.
Appellant was found guilty of driving while under the influence and speeding. Appellant filed a timely notice of appeal.
In his first assignment of error, appellant argues that the trial court erred in refusing to give an instruction on a missing witness when the state did not call the second highway patrol officer who was available; appellant argues that the state did not offer an explanation for why this witness was not called. Appellant had requested a missing witness instruction. This court finds no merit in this assignment of error.
This court's standard of review of this assignment of error is abuse of discretion. See, State v. Frost (1984),14 Ohio App.3d 320, 322. ("Action by the trial court pursuant to Crim.R. 30(B) is discretionary and should not be disturbed on review unless the court abuses its discretion.") "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. (Citations omitted).
In determining whether the trial court erred in refusing to give a missing witness jury instruction, this court begins its analysis with the following from Annotation, Adverse Presumption or Inference Based on State's Failure to Produce or Examine Law Enforcement Personnel-Modern Cases (1990), 81 A.L.R.4th 872, 878-882:
 "A brief review of the general requirements for applying the missing witness rule will be helpful before considering its function in the modern cases involving governmental parties' failure to present testimony from law enforcement personnel. The rule by its terms provides a great deal of latitude in determining whether an adverse inference is warranted under a given set of circumstances. * * *
"* * *
 "It should be noted that the requirements for drawing the missing witness inference may be construed more or less strictly, not only in different jurisdictions but also in different procedural contexts. The missing witness rule is a frequently requested subject of jury instructions, in which case a relatively strong showing of justifying circumstances is required (75 Am Jur 2d, Trial § 771); it is often the basis of argument by counsel, in which greater latitude is generally permitted (75 Am Jur 2d, Trial § 247); and it may also be used by the courts in evaluating the sufficiency of the evidence on a given point. * * *
"* * *
 "Most of the cases within the scope of this annotation are criminal prosecutions, and the courts have disapproved of the missing witness inference in the great majority of those cases * * *.
"* * *
 "Since law enforcement officers almost invariably play a significant role in criminal cases, it may be that a missing witness inference based on an officer's absence has been relatively seldom allowed partly because it is so easily sought by the defense; one court has observed that to hold all government employees particularly available to the prosecution because of their potential bias would unduly burden the government's investigative and prosecutorial functions.
 "Thus, the cases demonstrate that despite the possibility of bias on the part of law enforcement personnel in favor of the government, criminal defendants especially have had a difficult time invoking the missing witness inference against the government for not producing testimony from police officers and other law enforcement agents. However, despite the existence of such general considerations as the defendants' ability to conduct discovery and the burden on the prosecution if it were required to produce the officers involved in every case, the most important factor in determining the propriety of the missing witness inference in a particular case remains how the underlying circumstances of that case square with the rationale of the missing witness rule. As one court held when considering the prosecution's failure to call an officer to testify, an adverse inference is warranted only if the defendant establishes as a matter of reasonable probability that the prosecution would not knowingly fail to call the witness unless the witness' testimony would be damaging." (Emphasis added.) (Footnotes and section numbers omitted.)
In State v. Daugherty (1971), 26 Ohio App.2d 159,163-64, the appellate court noted that the proper rules to apply to determine whether the trial court erred in refusing to let the defense attorney argue the inferences to be drawn from the state's failure to call a police officer as a witness are embodied in the following:
 "`The failure of the prosecution to call a witness to prove a fact material to its case raises no inference unfavorable to the state, unless it is shown that the witness is within its reach. Also the prosecution's failure to call a witness does not give rise to an inference that his testimony would be unfavorable to its case, where he was not in a better position to know the facts than those who were called, or where his testimony would be merely cumulative, or would be unnecessary or immaterial, or where the witness was equally available to accused.' 22A Corpus Juris Secundum 373-4, Criminal Law, Section 594."
Appellant argues that Silveous v. Rensch (1969), 20 Ohio St.2d 82, paragraph one of the syllabus, is controlling. That paragraph provides:
 "1. A special instruction prior to argument, stating that when it appears a litigant knows of the existence of a material witness, and such witness is within the control of the litigant whose interest would naturally be to produce him, and without satisfactory explanation he fails to do so, the jury may draw an inference that the testimony would not be favorable to him, is error where the jury is not also instructed regarding the facts to be considered in determining what evidence a litigant would naturally produce at trial."
However, paragraph two of the syllabus is also instructive:
 "2. Evidence which is inferior or cumulative to evidence previously introduced is not evidence that a litigant would naturally produce."
The Ohio Supreme Court also stated:
 "Ordinarily, it could not be said that such a claimant would `naturally' call a witness whose testimony would be merely cumulative or inferior to that offered by other witnesses. If there is adequate relevant evidence on a particular issue, any additional evidence on that issue complained of as being absent is only cumulative, and its character as plaintiff's `natural' evidence is palled. To allow an unfavorable inference to be drawn from the nonproductivity of such evidence would serve to emasculate the historical basis for allowing the instruction." Id. at 84.
The first officer observed appellant speeding; stopped appellant; observed appellant have difficulty finding his license and registration; observed appellant refuse to exit his vehicle; spoke with appellant for a longer period of time while attempting to obtain appellant's cooperation to exit the vehicle and take field sobriety tests; arrested appellant; and transported appellant to the jail. The second officer only assisted in removing appellant from his vehicle. This court believes the second officer's testimony would have been merely cumulative to the first officer's testimony. This court does not believe that appellant has established that "an adverse inference is warranted" because appellant has failed to establish "as a matter of reasonable probability that the prosecution would not knowingly fail to call the witness unless the witness' testimony would be damaging." This court finds that the trial court did not err in refusing to give an instruction on a missing witness when the state did not call the second highway patrol officer.
Accordingly, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. This court finds no merit in this assignment of error.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court stated that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." The court also noted:
 "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." (Citation omitted.) Id.
In contrast to sufficiency, the court stated the following in regard to weight of the evidence:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Citation omitted.) (Emphasis sic.) Id. at 387.
The Ohio Supreme Court also noted that when an appellate court reverses a verdict as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
This court has reviewed the entire record in this case and cannot say that the jury lost its way and created a manifest miscarriage of justice. Appellant's conviction was not against the manifest weight of the evidence.
Accordingly, appellant's second assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Sylvania Municipal Court is affirmed. It is ordered that appellant pay court costs for this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _________________________________ Peter M. Handwork, P.J.
JUDGE
 ______________________________ George M. Glasser, J.
JUDGE
 _____________________________ James R. Sherck, J.
JUDGE
CONCUR.
[1] Appellant's originally retained attorney withdrew after he determined that the case would not settle and that his testimony as to appellant's speech on the evening of the arrest would be important.