OPINION
Appellant Alliance Equities, LLC ("Alliance Equities") appeals the jury verdict rendered in the Stark County Court of Common Pleas. The following facts give rise to this appeal. In early 1995, Alliance Equities and one of its limited partners, Dr. Brad Black, became involved in the construction and eventual ownership of a medical park building in the City of Alliance, known as the Medical Park of Alliance. During the construction process, Alliance Equities concentrated its efforts in securing lease agreements with various tenants in order to secure its financing for the project with the bank. In August 1995, Appellees Dr. Geoffrey Utterback, D.D.S. and Utterback Family Dental Associates, Inc. (hereinafter referred to collectively as "Dr. Utterback") became tenants in the new building and signed a lease agreement with Alliance Equities which contained a January 1, 1996 occupancy deadline. Due to delays in construction, certain tenants, including Dr. Utterback, began negotiating with Alliance Equities for a new lease agreement in May or June of 1996. Dr. Utterback and his attorney, Randy Wilson, were involved in the negotiation process. In June 1996, a representative of Alliance Equities, Mr. William Kaupus, presented a second lease agreement to Dr. Utterback. This lease provided for an occupancy date of December 1996. In this lease, the parties renegotiated the build-out allowance from $43 a square foot to less than $30 a square foot to insure that Dr. Utterback would not be responsible for any build-out costs. The parties signed the second lease in August 1996. However, as of December 30, 1996, Dr. Utterback's suite was not ready for his occupancy. Further, Alliance Equities sent a letter to Dr. Utterback requesting monies for plumbing expenses. In response, Dr. Utterback sent Alliance Equities a letter dated February 3, 1997, clarifying his understanding that pursuant to the second lease agreement, he was not responsible for improvement costs. Alliance Equities responded, through counsel, that it accepted the items as outlined in the February 3, 1997 letter. Thereafter, Alliance Equities drafted a third lease agreement, known as the "first amendment", which re-stated the issues in Dr. Utterback's correspondence. Counsel for Alliance Equities faxed this document to Dr. Utterback's counsel. Alliance Equities also notified Dr. Utterback that his suite was ready for occupancy. The rent was determined pursuant to the terms of the "first amendment." Dr. Utterback never signed this amendment. Subsequently, Dr. Utterback moved into his suite. After Dr. Utterback moved into the suite, Alliance Equities asked him for improvement costs with no regard to the terms of the "first amendment." Eventually, in March 1998, the parties scheduled a meeting to discuss this matter. Four people attended the meeting: Dr. Black and his attorney Thomas Winkhart, and Dr. Utterback and his attorney, Randy Wilson. At this meeting, Alliance Equities claims that it informed Dr. Utterback that it was still willing to agree to the amendment of the August 1996 lease if Dr. Utterback would simply sign the amendment and commit to the ten year tenancy. Alliance Equities also claims Dr. Utterback stated, at this meeting, that he is a month-to-month tenant. The parties did not settle their differences at this meeting. Finally, on November 30, 1998, Alliance Equities sent Dr. Utterback a letter which designated him as a month-to-month tenant subjecting him to double the amount of his rent, if he did not pay approximately $24,000 and sign another lease agreement. After receiving this letter, Dr. Utterback moved from the premises. On March 24, 1999, Alliance Equities filed a complaint against Utterback Family Dental Associates, Inc. and Dr. Utterback seeking to recover damages arising from an alleged breach and repudiation of the obligations under the lease agreement and subsequent amendment for a dental office suite. Dr. Utterback filed an answer and counterclaim on May 21, 1999. In the counterclaim, Dr. Utterback alleged that Alliance Equities breached the lease agreement. This matter proceeded to trial on April 12, 2000. Following deliberations, the jury returned a verdict in favor of Dr. Utterback on Alliance Equities' claims and entered a verdict in favor of Dr. Utterback on the counterclaim against Alliance Equities. However, the jury found that Dr. Utterback was not entitled to recover any compensatory damages on the counterclaim. Alliance Equities timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PRECLUDING APPELLANT'S COUNSEL, DURING CLOSING ARGUMENT, FROM MAKING REFERENCE TO THE APPELLEES' FAILURE TO CALL A CRITICAL, POTENTIAL WITNESS TO TESTIFY AT TRIAL AND FROM EXPLAINING TO THE JURY THE INFERENCE THAT THE POTENTIAL TESTIMONY FROM THIS CRITICAL WITNESS WOULD NOT HAVE SUPPORTED DR. UTTERBACK'S TRIAL TESTIMONY CONCERNING DR. UTTERBACK'S REPUDIATION OF THE LEASE AGREEMENT AT ISSUE.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PROHIBITING APPELLANT FROM IMPEACHING DR. UTTERBACK'S TESTIMONY ON CROSS-EXAMINATION AND CHALLENGING DR. UTTERBACK'S CREDIBILITY USING CERTAIN INCONSISTENT STATEMENTS MADE BY DR. UTTERBACK IN PRIOR PLEADINGS FILED WITH THE TRIAL COURT.
 I
In its First Assignment of Error, Alliance Equities contends that the trial court improperly restricted its remarks, during closing argument, concerning Dr. Utterback's failure to call Attorney Randy Wilson as a witness. We agree but overrule this assignment of error pursuant to Civ.R. 61. The general law in this area * * * is that if it appears from the evidence that a litigant knows of the existence of a witness and such witness is within the control of the litigant whose interest it would naturally be to produce him, and without satisfactory explanation he fails to do so, the jury may draw an inference that the testimony of the witness would not have been favorable to him. * * * And, of course, if the jury would be justified in drawing the inference, counsel would be within the limits of legitimate argument in urging the jury to draw it. Llewellyn v. Cincinnati Street Ry. Co. (1940), 66 Ohio App. 107,107-108.
However, for the above rule to apply, "* * * it must appear that the witness was under the control of the litigant failing to produce him." Id. at 108. Also, "[e]vidence which is inferior or cumulative to evidence previously introduced is not evidence that a litigant would naturally produce." Silveous v. Rensch (1969), 20 Ohio St.2d 82, paragraph two of the syllabus.
During Alliance Equities' closing argument, counsel made the following statement:
 MR. SKAKUN: Mr. Winkhart came in and told you under oath that he used those words. This (indicating) gentleman told you under oath that at the March meeting in 1998 he claimed to be a month-to-month tenant. The only person who denied it was Geoffrey Utterback. But there was a fourth person in the room that day, Mr. Randy Wilson, the attorney of the defendant. That seat remains empty.
MS. MILLS: Objection.
 THE COURT: Sustained. Absolutely sustained. Approach if you want to argue this one.
MS. MILLER (SIC): Yes.
 (Thereupon, a conference was had at the bench outside the hearing of the jury.)
MR. SKAKUN: I'll just go on.
 MS. MILLS: I will ask that that be stricken and the jury be given some kind of curative.
 THE COURT: I don't like to have closing arguments interrupted, but you can't talk about a witness that wasn't called. That's basic. Stick with what was presented and not an empty chair kind of thing. But let's limit it.
MS. MILLS: Can we have some type of instruction?
THE COURT: Don't worry about it. Just let it go.
(End of conference at the bench.) Tr. Vol. III at 733-734.
We conclude that counsel for Alliance Equities should have been permitted to make this argument as Alliance Equities satisfied the necessary requirements, pursuant to the above case law, to make this argument. Dr. Utterback knew of Attorney Randy Wilson's existence as he represented him at the meeting in March 1998. Also, Attorney Wilson was in the control of Dr. Utterback whose interest it would have been to naturally produce him. Finally, Dr. Utterback gave no explanation for failing to call Attorney Wilson as a witness. However, we conclude, based on our review of the record, that the trial court's failure to permit counsel for Alliance Equities to make this argument resulted in harmless error pursuant to Civ.R. 61. Counsel presented the argument to the jury. Although counsel for Dr. Utterback objected and the trial court sustained the objection, the court did not give a curative instruction. We further conclude the trial court's ruling was harmless error because it did not effect a substantial right of Alliance Equities. Appellant's First Assignment of Error is overruled.
 II
Alliance Equities maintains, in its Second Assignment of Error, that the trial court violated Evid.R. 611(B) when it refused to permit its counsel to impeach the testimony of Dr. Utterback concerning his prior inconsistent position with respect to the validity of the August 1996 lease. We agree but overrule this assignment of error pursuant to Civ.R. 61. Specifically, Alliance Equities contends that in Dr. Utterback's answer and various amended answers, he claimed that the August 1996 lease was no longer valid and enforceable after December 30, 1996. However, at trial, Dr. Utterback argued that the February 3, 1997 letter he drafted was, in effect, a valid amendment to the August 1996 lease agreement which was apparently always valid and binding against the parties. The trial court refused to allow this line of questioning based on Civ.R. 8(G), which provides as follows: (G) Pleadings shall not be read or submitted Pleadings shall not be read or submitted to the jury, except insofar as a pleading or portion thereof is used in evidence.
Alliance Equities contends the trial court's decision violated Evid.R. 611(B) dealing with the scope of cross-examination. The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest with the sound discretion of the trial court. O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163. Thus, the decision of the trial court to limit the scope of cross-examination will be reviewed for an abuse of discretion. Id. at 162. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. It is based on this standard that we review Alliance Equities' Second Assignment of Error. In support of this assignment of error, Alliance Equities cites two cases: Williams v. O'Brien (Nov. 25, 1992), Montgomery App. No. 12344, unreported, affirmed (1995), 72 Ohio St.3d 288 and Pegues v. Awadalla (Nov. 3, 1977), Mahoning App. No. 77 C.A. 18, unreported. In the Pegues case, the court of appeals stated: We are also convinced that Rule 8(G) of the Ohio Rules of Civil Procedure permits the reading to and submitting to the jury of pleadings. Existing pleadings may be used in evidence in the manner in which they are used in this case, to-wit: cross-examination relative to contradictory statements. Id. at 3.
We agree with this interpretation of Civ.R. 8(G) and find that the trial court abused its discretion when it did not permit counsel for Alliance Equities to cross-examine Dr. Utterback using pleadings filed in the case. However, as with the above assignment of error, we find the trial court's error was harmless under Civ.R. 61. The record indicates that counsel for Alliance Equities did question Dr. Utterback about the month-to-month tenant issue even though he was not permitted to refer to the pleadings filed in the case. Tr. Vol. I at 290-294. Appellant's Second Assignment of Error is overruled. For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Milligan, V. J. Hoffman, P.J., and Farmer, J., concur