JUDGMENT: CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED FORRESENTENCING
{¶ 1} Michael Bell ("Bell") appeals from his conviction and sentence received in the Cuyahoga County Court of Common Pleas. Bell argues that the trial court deprived him of due process of law, his right to a fair trial, and violated his constitutional rights. For the following reasons, we affirm the judgment of conviction, vacate the sentence and remand for resentencing.
 {¶ 2} On August 20, 2004, at approximately 8:30 p.m., Laquetta Marie Lucas ("Lucas") pulled into the driveway of her home at 7327 Otis Court in Cleveland, Ohio. Prior to returning home, Lucas picked up her two cousins, Crystal Ladson and Keisha Ladson. As Lucas removed items from her car, she heard an individual call her name and say, "[expletive omitted] where's my money?" Lucas stated that she turned around and saw Bell leaning out of the passenger window of a burgundy vehicle.
 {¶ 3} Lucas reported that she and Bell had a previous romantic relationship in high school and that on the night of August 20th, she saw Bell leaning out of the passenger window with his hand outstretched. Lucas stated that she heard three gunshots. Lucas jumped into the backseat of the vehicle, moved into the driver's seat and drove away. Lucas stated that as she drove off, Bell fired three more shots at her vehicle. Keisha Ladson, who was sitting in the backseat of the vehicle, stated that she saw Bell fire the gunshots at the car.
 {¶ 4} Approximately two hours later, LaNear Hughes ("Hughes"), Bell's current girlfriend and the mother of his child, was driving on Carnegie Avenue in Cleveland with her friend, Markisha Bester ("Bester"). As she was driving, Hughes told Bester that Bell was following her and then began driving over the speed limit and running red lights. Traffic forced Hughes to stop her vehicle at East 105th Street and Quincy, allowing Bell to pull his vehicle next to hers. Bester stated that she heard a gunshot fired into the back driver's side window, which caused the glass to break. Bester stated that she turned to her left, observed Bell with the handgun, and then jumped out of the vehicle. Bester stated that Bell fired two more shots, hitting the driver's side window and the driver's door of Hughes' vehicle. Bester reported that the gunshots did not hit either woman.
 {¶ 5} After Bell drove away, Hughes and Bester stopped Milton Anderson ("Anderson") who was driving on Carnegie and East 105th
Street. Anderson stated that he heard gunshots and then he saw Hughes, who told him her boyfriend just shot at her. Anderson drove Hughes and Bester to the Cleveland Police Station, 5th District.
 {¶ 6} After leaving the police station, Hughes spent the night at her father Johnny Coleman's ("Coleman") house. The following morning, August 21, 2004, Hughes received a phone call while still at Coleman's house. Hughes hung up and when the phone rang again, she handed the phone to her father. Coleman stated that he heard Bell say, "I missed this time, but next time I will not miss." Coleman stated that he had met Bell several times and knew his voice.
 {¶ 7} On August 24, 2004, Cleveland Detective Rhonda Gray ("Detective Gray") interviewed Hughes, Bester and Coleman. After she concluded her interview, Detective Gray identified Bell as the only suspect involved in the shooting. Cleveland Police later arrested Bell on a warrant connected with the incidents of August 20, 2004.
 {¶ 8} On September 22, 2004, the Cuyahoga County Grand Jury returned a six-count indictment, charging Bell with two counts of felonious assault, one count of domestic violence, one count of aggravated menacing, and two counts of attempted murder for the crimes committed against Hughes and Bester, CR459047. Each count, except aggravated menacing, contained one-and three-year firearm specifications. On November 19, 2004, the Cuyahoga County Grand Jury returned a six-count indictment charging Bell with three counts of felonious assault and three counts of attempted murder for the crimes committed against Lucas, Crystal Ladson, and Keisha Ladson, CR456708. Each count contained one-and three-year firearm specifications. On January 4, 2005, the Cuyahoga County Grand Jury returned a three count indictment charging Bell with forgery, uttering, and theft, CR460833.
 {¶ 9} Bell pleaded not guilty and proceeded to try cases CR459047 and CR456708 to a jury. Prior to trial, Bell's attorney moved for dismissal of the charges because of an alleged violation of his client's right to a speedy trial. The trial court denied this motion and consolidated cases CR459047 and CR456708.
 {¶ 10} Bell's trial began on December 9, 2005. Hughes did not testify for the State of Ohio ("State"). At the close of the State's case, Bell moved for a judgment of acquittal, which the trial court granted only as to the firearm specifications on the domestic violence charge.
 {¶ 11} Bell's defense counsel called Deondra Bell, Shontrell Thompson, and Michael Bell. Deondra Bell, Michael Bell's brother, testified that Bell called him at 7:30 a.m. on August 21, 2004, and asked him to pick him up at the Kings Inn in Bedford. Deondra Bell testified that when he arrived at the hotel, it appeared that Bell had been there all night long. Shontrell Thompson ("Thompson"), a Cuyahoga County Probation Officer, testified that she conducted a bond investigation on Bell's case. Thompson stated that on December 14, 2004, she contacted Bester and Hughes. Thompson stated that Bester did not identify Bell as the shooter, she merely said that whoever did this needs to stay away from her. Thompson also spoke with Hughes, however the trial court did not allow her to say what Hughes said.
 {¶ 12} Finally, Bell testified. Bell stated that he did not shoot at anyone on the night of August 20, 2004. Bell stated that his friend Tiarra Saint Clair picked him up that night and they both went and picked up a woman named Muffin. Bell reported that Tiarra Saint Clair dropped off Bell and Muffin at the Kings Inn Motel in Bedford, where they spent the night. Bell stated that the next morning, Muffin took the bus and his brother picked him up. Neither Tiarrra Saint Clair nor Muffin testified.
 {¶ 13} On December 14, 2005, the jury returned a verdict of guilty of two counts of felonious assault with the firearm specifications, guilty of domestic violence, and guilty of two counts of attempted murder with the firearm specifications. The jury found Bell not guilty of all charges involving Lucas, Crystal Ladson, and Keisha Ladson, as well as the aggravated menacing charge against Hughes.
 {¶ 14} On January 17, 2005, Bell pleaded guilty to forgery, uttering, and theft as charged in CR460833. On January 19, 2005, the trial court sentenced Bell to seven years on each of the felonious assault convictions, six months on his conviction for domestic violence, and eight years on each of the attempted murder convictions. The trial court merged the firearm specifications and ordered all prison terms to run concurrently. On case CR460833, the trial court sentenced Bell to eleven months of incarceration on each charge, to run concurrent with CR456708 for a total prison sentence of eleven years.
 {¶ 15} Bell appeals, raising the fourteen assignments of error contained in the appendix to this opinion.
 {¶ 16} In his first assignment of error, Bell argues that the trial court violated his right to a speedy trial. This assignment of error lacks merit.
 {¶ 17} Speedy trial provisions are mandatory, and, pursuant to R.C.2945.73(B) and (D), a person not brought to trial within the relevant time constraints "shall be discharged," and further criminal proceedings based on the same conduct are barred. A person charged with a felony shall be brought to trial within two hundred and seventy days of their arrest. R.C. 2945.71(C)(2). If that person is held in jail in lieu of bail, then each day of custody is to be counted as three days. R.C.2945.71(E). This "triple-count" provision applies only when the defendant is being held in jail solely on the pending charge. State v.MacDonald (1976), 48 Ohio St.2d 66, paragraph one of the syllabus. Therefore, the triple-count provision does not apply when a defendant is being held in custody pursuant to other charges. Id.
 {¶ 18} Bell was held in jail in lieu of bail in cases CR456708 and CR459047 from September 10, 2004 through September 29, 2004. Therefore, the triple-count provision does not apply to the time period listed above. Accordingly, to avoid violating Bell's rights under R.C. 2945.71, the State had to begin its case within two hundred and seventy days of Bell's September 10, 2004 arrest.
 {¶ 19} However, the running of the speedy trial clock may be temporarily stopped for reasons listed in R.C. 2945.72. A court charged with reviewing a speedy trial issue is required to count the days of delay chargeable to either side and determine whether the case was tried within applicable time limits. State v. Sanchez, 110 Ohio St.3d 274,2006-Ohio-4478. We must determine if the State complied with the statute's strict standards in this case.
 {¶ 20} On October 4, 2004, Bell filed a motion for discovery, which tolls the speedy trial time. State v. Brown, 98 Ohio St.3d 121,2002-Ohio-7040. Therefore, from October 4, 2004 through October 25, 2004, when the State responded to Bell's discovery demand, the speedy trial clock was tolled. Additionally, Bell filed numerous continuances, which also toll the speedy trial clock. State v. Taylor,98 Ohio St.3d 27, 2002-Ohio-7017. Though Bell correctly argues that several continuances were at the request of the court and the State, the time charged to Bell, pursuant to continuances and his demand for discovery, kept the State within the requirements of Ohio's speedy trial statute. R.C. 2945.71 and R.C. 2945.72.
 {¶ 21} Accordingly, Bell's first assignment of error is overruled.
 {¶ 22} In his second assignment of error, Bell argues that the trial court denied his Sixth Amendment right when it refused to excuse prospective jurors for cause. This assignment of error lacks merit.
 {¶ 23} Bell argues that two jurors should have been removed for cause. Crim. R. 24(C)(9) provides the standard for when a juror may be challenged for cause, as follows:
 "That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial."
 {¶ 24} While initially expressing some doubt, after discussion with the trial court, both juror Bazydlo and juror Milowicki stated that they could be fair and impartial. Moreover, defense counsel used a peremptory challenge to strike juror Bazydlo from the panel, while juror Milowicki did not even hear the instant case.
 {¶ 25} Accordingly, Bell's second assignment of error is overruled.
 {¶ 26} In his third assignment of error, Bell argues that the trial court erred when it did not allow Thompson to testify to Hughes' out-of-court statements. This assignment of error lacks merit.
 {¶ 27} In this assignment of error, Bell argues that Thompson should have been able to testify as to what Hughes told her over the phone during her bond investigation. Specifically, Bell alleges that Hughes told Thompson that Bell was not involved in the shooting. Bell cites toState v. Kline (1983), 11 Ohio App.3d 208, in support of his position.
 {¶ 28} Bell's reliance on Kline is misplaced. The Kline court held that extrajudicial statements offered for impeachment purposes are not hearsay because they are not offered for the truth of the matter asserted. Id. The statement that Bell sought to admit at trial, that he was not involved in the shooting, was exactly the defense he was trying to make. In other words, Bell sought to admit Hughes' out-of-court statement, to prove that he was not the shooter. Hughes' statement constitutes impermissible hearsay and the trial court correctly kept it out of evidence. See Evid. R. 801(C).
 {¶ 29} Bell's third assignment of error is overruled.
 {¶ 30} In his fourth assignment of error, Bell argues that the trial court violated his rights when it allowed witnesses to state their opinions as to the truth and veracity of their statements. This assignment of error lacks merit.
 {¶ 31} Bell complains about Bester's testimony in which she recounts Hughes' statements. Specifically, Bester testified that immediately after the shooting, Hughes stated "I knew he was going to try something. He told me earlier." Bester also stated that Hughes told Anderson that "Michael" was the shooter, and "the father of her baby" was the shooter. Hughes' statements, to which Bester testified, were made out of court and were offered by the State for the truth of what it asserted. As such, they constituted impermissible hearsay. See Evid.R. 801(C). However, these hearsay statements were properly received into evidence pursuant to the excited utterances exception to the hearsay requirement. See Evid.R. 803(2); State v. Duncan (1978), 53 Ohio St.2d 215. The trial court did not err when it allowed Bester to testify to Hughes' out-of-court statements.
 {¶ 32} Bell also complains about Detective Gray's testimony that she had only one suspect, Bell, and that she knew nothing that would point to any other possible culprit. These statements reflected Detective Gray's knowledge of the investigation and did not constitute an opinion as to the truth or veracity of the statements.
 {¶ 33} Accordingly, Bell's fourth assignment of error is overruled.
 {¶ 34} In his fifth assignment of error, Bell argues that the trial court erred when it allowed a witness to testify to a telephone identification of Bell. This assignment of error lacks merit.
 {¶ 35} On August 21, 2004, Hughes received a phone call and handed the phone to her father, Coleman. Coleman heard the person on the other end of the phone say "I missed this time, but next time I will not miss." Coleman testified that the voice he heard over the telephone belonged to Bell. Even if the trial court committed error in allowing this testimony, the jury found Bell not guilty on the charge of menacing. Accordingly, this evidence did not deprive Bell of his rights to due process or a fair trial as argued by appellate counsel.
 {¶ 36} Bell's fifth assignment of error is overruled.
 {¶ 37} In his sixth assignment of error, Bell argues that the trial court erred when it failed to issue a bench warrant for a properly subpoenaed witness. This assignment of error lacks merit.
 {¶ 38} In support of this assignment of error, Bell cites to State v.Castle (1994), 92 Ohio App.3d 732. In Castle, the Ninth Appellate District held that valid summons was completed when the witnesses were properly served at their usual place of residence as required by Crim.R. 17 and when they had actual knowledge of the subpoenas and the consequences that could result from failure to obey the subpoenas.
 {¶ 39} This case is distinguishable from Castle. When questioned by the trial court, Bell's counsel admitted Ms. Saint Clair had not been personally served. Bell's attorney stated the following:
 "[The subpoena had] been delivered to her residence, 16406 South Lotus. They made contact, as he testified to, with her mother, who has the subpoena. Her mother says she hasn't seen her in several days. He called the cell phone. There's no response to the cell phone. He went over to where she worked at Dave's Supermarket even and she apparently hasn't been there in a few days."
 {¶ 40} Based on the above, the trial court correctly refused to issue a bench warrant. Bell's counsel failed to put forth evidence that Ms. Saint Clair knew of the subpoena or that she was aware of the consequences that could result from the failure to obey the subpoena. The trial court found as such and denied Bell's counsel's request.
 {¶ 41} Bell's sixth assignment of error is overruled.
 {¶ 42} In his seventh assignment of error, Bell argues that "he was denied a fair trial by reason of improper prosecutorial argument." This assignment of error lacks merit.
 {¶ 43} In this assigned error, Bell finds error with the following statement made by the prosecutor during closing argument: "I submit to you that these charges have been proven beyond a reasonable doubt." Bell then cites to numerous cases that hold it improper for the prosecutor to state that he believes the defendant is guilty.
 {¶ 44} The statement cited to above does not express the prosecutor's opinion of Bell's guilt. It merely expresses the opinion that the evidence presented at trial proved the charges beyond a reasonable doubt. Moreover, the trial court informed the jury that the opening and closing statements made by the State and defense counsel are not evidence and are not to be considered in deliberation.
 {¶ 45} Accordingly, Bell's seventh assignment of error is overruled.
 {¶ 46} In his eighth, ninth, tenth, and eleventh assignments of error, Bell finds error with the trial court's jury instructions. Because these assignments of error address the same legal issue, they will be addressed contemporaneously.
 {¶ 47} When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction constituted an abuse of discretion. State v. Felder, Cuyahoga App. No. 87453, 2006-Ohio-5332. Jury instructions are reviewed in their entirety to determine if they contain prejudicial error. Id.
 {¶ 48} Bell first complains about the trial court's failure to give a missing witness instruction. Bell argues that Hughes was a key witness for the State, she did not testify for the State, and the trial court did not give an explanation for her absence. Bell claims that the trial court should have instructed the jury that it could draw an adverse inference where a witness is favorable to a party in the litigation and does not appear and testify. Bell cites to Silveous v. Rensch (1969),20 Ohio St.2d 82, in support of this argument.
 {¶ 49} In Silveous, the Ohio Supreme Court held as follows:
 "A special instruction prior to argument, stating that when it appears a litigant knows of the existence of a material witness, and such witness is within the control of the litigant whose interest would naturally be to produce him, and without satisfactory explanation he fails to do so, the jury may draw an inference that the testimony would not be favorable to him, is error where the jury is not also instructed regarding the facts to be considered in determining what evidence a litigant would naturally produce at trial."
 {¶ 50} The instant case is easily distinguishable fromSilveous. The record does not contain any indication that the witness in question was "within the control of the litigant whose interest would naturally be to produce him," as is required by Silveous. Accordingly, the trial court did not abuse its discretion when it did not give a missing witness jury instruction.
 {¶ 51} Bell next complains about the trial court's instruction to the jury that the defendant could be found guilty even for the intervening act of another. The trial court gave the following instruction:
 "Intervening causes. The defendant is responsible for the natural consequences of the defendant's unlawful act or failure to act, even though death was also — alright. Disregard that. There's no allegation that anybody died. Even though the attempt at physical harm was also caused by an intervening act, if there was an intervening act or failure to act or another person or agency."
 {¶ 52} This is a standard jury instruction in Ohio. Additionally, this case did not involve any evidence of an intervening act. Therefore, the jury instruction could not have any impact on the jury's deliberation. The trial court did not abuse its discretion when it gave the above jury instruction.
 {¶ 53} Bell also complains about the trial court's "on or about" jury instruction when he filed a notice of alibi. When instructing the jury, the trial court gave the following instruction:
 "The date that the offenses in this indictment allegedly occurred have been previously stated. It is not necessary that the State prove that the offenses were committed on the exact day as charged in the indictment. It is sufficient to prove that the offense took place on a date reasonably near the date claimed."
 {¶ 54} This instruction is also a standard instruction in Ohio. The jury heard evidence from the State with regard to when the offenses occurred. The jury also heard evidence from Bell about his alibi. Accordingly, the jury was free to weigh the evidence and this instruction did not result in any harm to Bell's case. The trial court did not err when it gave this instruction.
 {¶ 55} Finally, Bell complains about the trial court's special consideration instruction concerning his testimony. The trial court gave the following jury instruction:
 "You will give his [Bell's] testimony the weight it is entitled to receive, taking into consideration his interest in the outcome of the case and apply to his testimony the same rules that you apply to the testimony of all other witnesses who appeared in this case."
 {¶ 56} This instruction is also a standard instruction in Ohio. When evaluating the credibility of the witnesses, a jury may take into consideration any interest the witness has in the outcome of a case. This instruction applies to all witnesses, not just Bell. Accordingly, the trial court did not abuse its discretion when it gave this instruction.
 {¶ 57} Bell's eighth, ninth, tenth, and eleventh assignments of error are overruled.
 {¶ 58} In his twelfth assignment of error, Bell argues that the State failed to present sufficient evidence to support his convictions for attempted murder. This assignment of error lacks merit.
 {¶ 59} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 60} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
 {¶ 61} The jury found Bell guilty of the attempted murder of Hughes and Bester, which pursuant to R.C. 2923.02 and R.C. 2903.02 provides as follows:
 "No person shall [attempt to] cause the death of another * * *."
 {¶ 62} In support of its conviction of Bell, the State presented the following testimony from Bester: As she was riding in the car with Hughes, Hughes stated that Bell was following her; Hughes began driving fast and running red lights; Bester heard a gunshot hit the rear driver's side window; Bester turned to her left and saw Bell driving a burgundy vehicle with a gun in his outstretched hand; Bester jumped out of the car and heard Bell fire two more gunshots; Bester reported that the bullets hit the driver's window and the driver's door.
 {¶ 63} In response, Bell attacks Bester's credibility. Bell cites to one sentence in Bester's testimony where she erroneously said Bell shot out the rear passenger seat window. Bell argues that because of this, he could not possibly have attempted to murder Hughes and Bester. Bell goes on to argue that Bester's uncertain testimony should not have been given any weight and his conviction should be reversed.
 {¶ 64} Though Bester did say as much during her testimony, a reading of her entire testimony reveals that she repeatedly testified that it was the driver's side rear window that Bell shot out with the handgun. Moreover, Bester testified that she saw Bell with a gun in his hand and that it was aimed at Hughes, who was to her immediate left.
 {¶ 65} Viewing this evidence in the light most favorable to the State, it is reasonable to conclude that Hughes and Bester were in Bell's line of fire when he shot three rounds into the vehicle. Therefore, any rational trier of fact could conclude that the State proved the elements of attempted murder beyond a reasonable doubt.
 {¶ 66} Bell's twelfth assignment of error is overruled.
 {¶ 67} In his thirteenth and fourteenth assignments of error, Bell finds error with the trial court's imposed sentence. We will address these assignments of error contemporaneously.
 {¶ 68} In his fourteenth assignment of error, Bell argues that the trial court erred when it imposed more than the minimum sentence.
 {¶ 69} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that judicial findings are unconstitutional and that several provisions of Senate Bill 2 are unconstitutional. Id. The court concluded that a trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive, or more than the minimum sentences. Id. The Foster holding applies to all cases on direct review, which includes the present case. Because the trial court sentenced Bell under unconstitutional statutory provisions, he must be resentenced. See, also, State v. Childs, Cuyahoga App. No. 87408,2006-Ohio-5016; State v. Malcolm, Cuyahoga App. No. 87622,2006-Ohio-6024.
 {¶ 70} Accordingly, Bell's fourteenth assignment of error is sustained.
 {¶ 71} In his thirteenth assignment of error, Bell argues that the trial court erred when it sentenced him on both attempted murder and felonious assault. Our discussion of the fourteenth assignment of error renders this assignment of error moot.
 {¶ 72} We affirm the judgment of conviction, vacate the imposed sentence and remand the matter for resentencing.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and PATRICIA A. BLACKMON, J., CONCUR.
 Appendix A
Assignments of Error:
 "I. Defendant was denied due process of law when the court denied defendant's motion to dismiss by reason of a lack of a speedy trial.
 II. Defendant was denied his Sixth Amendment right when the court refused to excuse prospective jurors for cause.
 III. Defendant was denied due process of law and his right to present a defense when the court would not allow evidence of out of court statements made by LaNear Hughes.
 IV. Defendant was denied due process of law when witnesses were allowed to state their opinions as to the truth and veracity of their statements. V. Defendant was denied due process of law when the court allowed a witness to testify concerning identification over a telephone.
 VI. Defendant was denied his constitutional right to present a defense when the court would not issue a bench warrant for a properly subpoenaed witness.
 VII. Defendant was denied a fair trial by reason of improper prosecutorial argument.
 VIII. Defendant was denied due process of law when the court did not give a missing witness instruction.
 IX. Defendant was denied due process of law when the court instructed the jury that defendant could be found guilty even for the intervening act of another.
 X. Defendant was denied due process of law when the court gave an on or about instruction where defendant filed a notice of alibi.
 XI. Defendant was denied due process of law when the court made a special consideration instruction concerning defendant's testimony.
 XII. Defendant was denied due process of law when the court overruled his motion for judgment of acquittal as to attempted murder.
 XIII. Defendant was denied due process of law when he was sentenced on both attempted murder and felonious assault arising on the same transaction involving the same victims.
 XIV. Defendant was denied due process of law when he was sentenced to more than a minimum sentence.