**POLLOCK, Appellant,**

v.

**BRIGANO et al., Appellees.**

[Cite as *Pollock v. Brigano* (1998), 130 Ohio App.3d 505.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA97–12–124.

Decided Nov. 9, 1998.

506

*Susan Marie Pollock, pro se.*

*Betty D. Montgomery,* Attorney General, and *Todd R. Marti,* Assistant Attorney General, for appellees.

---

Koehler, Judge.

Plaintiff-appellant, Susan Marie Pollock, also known as Mark Pollock, a Warren Correctional Institution ("WCI") inmate, appeals the decision of the Warren County Court of Common Pleas dismissing a *pro se* civil rights complaint filed

against defendants-appellees, prison officials of WCI.[1] We affirm the judgment of the trial court.

Appellant is allegedly a transsexual suffering from gender dysphoria, a psychological gender-identity disorder. See *Meriwether v. Faulkner* (C.A.7, 1987), 821 F.2d 408, 410; Diagnostic and Statistical Manual of Mental Disorders (4 Ed.1994) 523–538. In essence, gender-identity disorder refers to a biological male or female who believes that he or she was born the wrong gender. *Meriwether* at 411–412.

On December 16, 1993, appellant filed a complaint alleging numerous civil rights violations under the First, Eighth, and Fourteenth Amendments to the United States Constitution.[2] On November 8, 1995, appellant filed a supplemental complaint alleging additional constitutional violations, including privacy claims. After a motion by appellees, the trial court dismissed the privacy claims pursuant to Civ.R. 12(B)(6) on February 7, 1996. Appellant appealed the decision to this court, but we dismissed the appeal because the February 7, 1996 order was not a final appealable order.

On November 22, 1996, appellees moved for summary judgment on the remainder of appellant's claims. In response, appellant filed numerous memoranda, which included twenty-four different declarations. Appellees filed a consolidated reply, which moved to strike twenty-two of the declarations as unsworn in the presence of a notary. In November 1997, the trial court granted the motion to strike and the motion for summary judgment in favor of appellees. On December 15, 1997, appellant filed a timely notice of appeal. Appellant presents five assignments of error for our review:

Assignment of Error No. 1:

"The trial court erred in striking the affidavits the appellant submitted in opposition to the summary judgment motion."

---

**1.** Although it does not appear from the record that appellant cited the relevant federal statute, it is clear that appellant's claims are properly raised under Section 1983, Title 42, U.S.Code, which generally applies to the deprivation of civil rights under color of law. See Rotunda & Nowak, Treatise on Constitutional Law (2 Ed.1992) 574–577, Section 19.15.

**2.** The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The Fourteenth Amendment states, "[N]or shall any state deprive any person of life, liberty, or property, without due process of law * * *."

Assignment of Error No. 2:

"The trial court erred in (1) not giving the appellant any warning that only notarized affidavits would be accepted and (2) by failing to consider any alternative means."

Assignment of Error No. 3:

"The trial court erred in failing to consider appellant's verified complaint as evidence in opposition to the summary judgment motion."

Assignment of Error No. 4:

"The trial court erred in finding that the appellant's religious freedom claim was 'res judicata.' "

Assignment of Error No. 5:

"The trial court erred in dismissing the appellant's 'privacy' claims."

Appellant's first and second assignments of error address similar legal issues and will be addressed together. In the first assignment of error, appellant argues that the trial court erred by striking twenty-two unnotarized declarations from appellant's responses to appellees' motion for summary judgment. In the second assignment of error, appellant claims that the trial court did not give notice that unnotarized declarations would not be considered, and/or provide alternative means of receiving the testimony contained in the unsworn declarations.

The Supreme Court of Ohio has addressed the issue directly. See *In re Disqualification of Pokorny* (1992), 74 Ohio St.3d 1238, 657 N.E.2d 1345. In *Pokorny,* the court stated that in order for a declaration to be considered an affidavit, a declaration must be sworn in the presence of a notary or other person authorized to administer oaths. Moreover, since an unsworn declaration is not an affidavit, it cannot be considered as evidence under Civ.R. 56. The Supreme Court of Ohio has never indicated any exception for *pro se* prisoner civil rights cases, and we decline to judicially create one. Although appellant asserts a lack of any access to a notary, there is no indication in the record that appellant ever requested prison officials to notarize documents and had that request refused. In regard to appellant's other assertions, the trial court is under no obligation to inform appellant of the rules of summary judgment, provide appellant with alternative means of presenting evidence, or warn appellant of potential defects in the pleadings. Thus, the first and second assignments of error are overruled.

In the third assignment of error, appellant alleges that the trial court failed to consider appellant's verified complaint before granting appellees summary judgment. We disagree.

Appellant is allegedly a transsexual and has been previously diagnosed with that psychological condition. However, appellant never supplied the trial

court with an affidavit or any other evidence from a qualified physician confirming these allegations. The simple fact is that appellant is unqualified to reach a medical and/or psychological diagnosis about gender-identity disorder or any other medical and/or psychological condition. Accordingly, the third assignment of error is overruled.

In the fourth assignment of error, appellant claims that the trial court erred in finding appellant's religious-freedom claim to be barred by *res judicata*. The supplemental complaint states that appellant claims to be of Native American descent and contends that appellees' insistence upon short hair violates appellant's religious beliefs. In dismissing this claim upon summary judgment, the trial court stated that the claim could not proceed because (1) the Religious Freedom Restoration Act of 1993, Section 2000bb *et seq.*, Title 42, U.S.Code ("RFRA"), was declared unconstitutional, and (2) this issue was previously decided in a similar case concerning appellant, *Pollock v. Marshall* (C.A.6, 1988), 845 F.2d 656.

RFRA has been declared unconstitutional by the United States Supreme Court. *Boerne v. Flores* (1997), 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624. Appellant argues that the claim was never based upon RFRA, but only the First Amendment to the United States Constitution. However, appellant argued RFRA's applicability to prisoner cases in a March 19, 1997 memorandum in opposition to appellees' motion for summary judgment. In any event, it is now clear that RFRA does not provide a legal basis for appellant's religious-freedom claim.

Aside from RFRA, appellant insists that the trial court erred by deciding appellant's religious-freedom claim on the basis of *res judicata*. However, we need not address this issue because the trial court's decision never mentions *res judicata*, but merely cites the Sixth Circuit's *Pollock* decision as the precedent for its legal ruling.[3] Simply, a state can regulate prisoners' hair length because such regulations are reasonably related to legitimate penological purposes. *O'Lone v. Estate of Shabazz* (1987), 482 U.S. 342, 355, 107 S.Ct. 2400, 2407, 96 L.Ed.2d 282, 294; *Harman v. Ohio Dept. of Corr.* (1991), 74 Ohio App.3d 703, 704, 600 N.E.2d 314, 315. Upon our review of the trial court's order granting summary judgment in favor of appellees, we find that appellant's religious-freedom claim has no constitutional redress. Accordingly, the fourth assignment of error is overruled.

---

3. Even if we assumed the trial court incorrectly decided the hair regulation issue on the basis of *res judicata*, an appellate court can affirm a trial court's decision to grant summary judgment based upon different legal reasoning. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309–310.

■ In the fifth assignment of error, appellant argues that the trial court erred by dismissing appellant's privacy claims pursuant to Civ.R. 12(B)(6) for "failure to state a claim upon which relief can be granted." We review the trial court's decision to dismiss a claim pursuant to Civ.R. 12(B)(6) *de novo. Bell v. Horton* (1995), 107 Ohio App.3d 824, 826, 669 N.E.2d 546, 547–548.

Appellant's privacy claims allege violations of appellant's federal constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments. Specifically, appellant alleges in a supplemental complaint, claims three through seven, that as a transsexual, appellant lacks privacy in showering, changing clothes, and using the toilet. In addition, appellant allegedly has been groped by prison guards as they conduct patdown searches.

The trial court dismissed claims three through seven pursuant to Civ.R. 12(B)(6) and stated that appellant "has forfeited the right of privacy in the cell," citing *Hudson v. Palmer* (1984), 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393, 402–403. While we generally agree with the trial court's analysis of *Hudson,* the trial court failed to address all of the constitutional issues implicit in appellant's claims three through seven. Nevertheless, for the reasons given below, we find that claims three through seven have no merit and were subject to Civ.R. 12(B)(6) dismissal.

■ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." In *Hudson,* the United States Supreme Court held that "the Fourth Amendment has no applicability in a prison cell." *Id.* at 536, 104 S.Ct. at 3205, 82 L.Ed.2d at 409. The court explained that "[w]e are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement.'" *Id.* at 528, 104 S.Ct. at 3201, 82 L.Ed.2d at 404, quoting *Bell v. Wolfish* (1979), 441 U.S. 520, 537, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447, 467.

■ In this case, appellant is asking for Fourth Amendment privacy rights due to an alleged transsexual condition. Although the facts and issues in this case are different from those in *Hudson,* the legal principle remains the same. In short, we do not believe that appellant's privacy concerns rise above the paramount need for institutional security for the other prisoners and the staff of WCI. *Bell,* 441 U.S. at 537, 99 S.Ct. at 1873, 60 L.Ed.2d at 467. Accordingly, appellant's claims do not implicate any Fourth Amendment right to privacy.

■ Further, we conclude that the claimed lack of privacy does not constitute cruel and unusual punishment under the Eighth Amendment, because

prison policy at WCI is not wanton, unnecessary, or "totally without penological justification." See *Rhodes v. Chapman* (1981), 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59, 68. Finally, appellant's privacy claims do not constitute a cognizable First Amendment claim based on the Free Exercise Clause [4] because appellant's allegations of lack of privacy are superseded by the legitimate penological needs of WCI. *O'Lone,* 482 U.S. at 355, 107 S.Ct. at 2407, 96 L.Ed.2d at 294. Thus, appellant's fifth assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., and WALSH, J., concur.

---

4. Appellant claimed in the supplemental complaint that one tenet of appellant's religious beliefs is modesty.