JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Ashanti Felder ("Felder"), appeals his convictions. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Felder was charged with drug possession and drug trafficking, each charge containing a firearm specification. He was also charged with possession of criminal tools and having a weapon while under disability.
 {¶ 3} Prior to trial, Felder moved to suppress the evidence found in his apartment. The court considered and denied his motion after the jury was empaneled. The jury then heard the following evidence.
 {¶ 4} Felder had been under surveillance since October 2004 for suspected drug trafficking. The police had received numerous complaints of suspicious activity involving Felder at his Cuyahoga County apartment. In May 2005, a resident of the apartment complex observed Felder engaging in "abnormal activities" that appeared to be a drug transaction. The resident followed Felder to a shopping center in Lake County and observed a man enter Felder's car and make an exchange. The resident contacted the police and relayed what he had observed.
 {¶ 5} Willoughby Hills police set up surveillance at the shopping center. Officer Cooper testified that he observed Felder's car driving across the parking lot at a high rate of speed. Felder jumped out of his car and jogged into a store, ignoring Cooper's orders to "[h]old on a second. Stop." Cooper and other officers followed him into the store and brought him outside for a protective search. Two cell phones and $2,000 in cash were found on his person. Marijuana was found in plain view inside Felder's car, and a resulting search recovered a rock of heroin.
 {¶ 6} While being detained in Lake County, Felder signed a consent to search form to allow officers to search his apartment in Cuyahoga County. During that search, the police recovered a gun, bullets, a packet of heroin, plastic baggies, and razor blades.
 {¶ 7} The jury found Felder guilty of drug possession, but not guilty of the firearm specification. He was also found guilty of possession of criminal tools and having a weapon while under disability, but he was acquitted of drug trafficking. The court sentenced him to a total of three years in prison.
 {¶ 8} Felder appeals, raising thirteen assignments of error, which will be addressed together where appropriate.
 Motion to Suppress {¶ 9} In his first, second, and third assignments of error, Felder challenges the court's decision to deny to his motion to suppress. On appeal, he does not challenge the lawfulness of the underlying Lake County arrest, but argues that his consent to search was obtained by coercion. Although he makes a blanket statement that he was arrested illegally, this general statement without any authority in support thereof, does not afford appropriate appellate review. Nevertheless, after reviewing the circumstances surrounding the arrest, we find nothing to support Felder's general assertion that his arrest was improper.
 {¶ 10} At a hearing on a motion to suppress, the trial court functions as the trier of fact, because the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of the witnesses. Statev. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7. After accepting such factual findings, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. State v. Lloyd (1998),126 Ohio App.3d 95, 709 N.E.2d 913.
 {¶ 11} Felder first claims that he was coerced into consenting to the search of his apartment because he was denied access to an attorney after being arrested and because he was detained for a prolonged period of time.
 {¶ 12} R.C. 2935.14 and 2935.20 generally require that a person arrested or confined be provided facilities with which to obtain counsel, or communicate with his attorney. R.C. 2935.20
specifically provides:
"After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section."
 {¶ 13} In State v. Benner (1988), 40 Ohio St.3d 301, 310,533 N.E.2d 701, in the context of Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Ohio Supreme Court held that a person must affirmatively articulate a request for counsel in order for the right to attach during interrogation. R.C. 2935.20 does not require an officer "to read the mind of the person arrested to determine that the person's purpose in seeking to communicate with a non-lawyer is `for the purpose of obtaining counsel.'" State v. Bock (Nov. 10, 1987), Montgomery App. No. 10384. Unless the detained individual indicates to the officer that this is his purpose, an attempt to communicate with a non-lawyer is simply not within the scope of R.C. 2935.20. Bock, supra.
 {¶ 14} In the instant case, Felder claims that he was denied his right to contact his mother for the purpose of contacting his attorney. Although it is undisputed that Felder asked to call his mother, there is nothing in the record showing that the purpose of the call was to obtain counsel. Moreover, there is nothing in the record indicating that Felder asked to speak with an attorney. Because he did not express any desire to communicate with an attorney or to communicate with a non-attorney for the purpose of obtaining an attorney, we conclude that the provisions of R.C. 2935.20 do not apply. Therefore, we find that Felder's right to contact an attorney was not violated.
 {¶ 15} Felder also argues that his consent to search was coerced by his prolonged detention. We disagree.
 {¶ 16} When police conduct a warrantless search, the State bears the burden of establishing the validity of the search. Searches and seizures without a warrant are "per se unreasonable" except in a few well-defined and carefully circumscribed instances. Coolidge v. New Hampshire (1971), 403 U.S. 443,454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564. It is equally well established, however, that a search of property without a warrant or probable cause but with proper consent having been voluntarily obtained does not violate the Fourth Amendment. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 249, 93 S.Ct. 2041,36 L.Ed.2d 854; State v. Posey (1988), 40 Ohio St.3d 420, 427,534 N.E.2d 61.
 {¶ 17} The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. Schneckloth, supra at 227. The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect. Florida v. Jimeno (1991), 500 U.S. 248, 251,111 S.Ct. 1801, 114 L.Ed.2d 297.
 {¶ 18} Detention of an individual by a law enforcement officer does not violate the Fourth Amendment if there are at the very least, specific and articulable facts indicating the detention was reasonable. State v. Gillenwater, Franklin App. No. 02AP-292, 2003-Ohio-1651, citing State v. Chatton (1984),11 Ohio St.3d 59, 61, 463 N.E.2d 1237. Where the intrusion into a person's freedom is slight, the detention of the individual may be justified under the Fourth Amendment by a strong public interest such as prevention of crime, preservation of evidence, or safety of the police officer. State v. McFarland (1982),4 Ohio App.3d 158, 446 N.E.2d 1168.
 {¶ 19} In the instant case, Felder was arrested for drug possession and trafficking. Detective DeBiase testified at the suppression hearing that Felder had been under surveillance for suspected drug trafficking. She further testified that the police were concerned that if Felder contacted his mother, any potential evidence inside his apartment could be destroyed. Therefore, they denied him access to a phone to preserve any evidence contained inside the apartment. Moreover, the length of time he was detained was not unreasonable, considering that DeBiase did not make the underlying arrest, and that the officers contacted the prosecutor's office to obtain a warrant but were told to try to obtain a consent first. Nothing in the record shows that Felder was coerced or under duress during that time. In fact, the record reflects that he was more concerned that the officers might "mess up" his apartment.
 {¶ 20} Therefore, we find that the Felder's detention and the denial of his request to contact his mother were necessary for the preservation of evidence located inside his apartment. Based on the totality of the circumstances, the consent to search signed by Felder was not a product of coercion or duress. Therefore, we find that Felder was not coerced into consenting to the search of his apartment.
 {¶ 21} Felder also claims that the court should have granted his motion to suppress because he was not advised of hisMiranda rights. Detective DeBiase testified that she personally did not read him his rights, but prior to obtaining his consent to search, she asked him whether he understood his rights, to which Felder replied that he did. She further testified that Officer Meano read him his rights when Felder was arrested. Moreover, his counsel stated at the suppression hearing that, after Felder was taken to the Willoughby Hills police station, "he was given his rights." Therefore, we find that he was properly advised of his Miranda rights.
 {¶ 22} Felder's next argument concerns the trial court's consideration of and ruling on his motion to suppress after the jury had been empaneled. Felder failed to object to the trial court's decision not to rule on his motion to suppress prior to trial, thereby waiving any argument on appeal. State v. Canady
(Apr. 16, 1992), Cuyahoga App. No. 60355. Moreover, because we find that the trial court properly denied his motion to suppress, any error was harmless.
 {¶ 23} Accordingly, his first, second, and third assignments of error are overruled.
 Confrontation of Witnesses {¶ 24} Felder argues in his fourth assignment of error that he was denied due process of law and his right to confront witnesses when the court allowed hearsay evidence.
 {¶ 25} The only testimony Felder cites which could possibly be deemed inadmissible hearsay is that which relates to the property manager of the Marcella Arms apartment complex. Detective DeBiase testified that she knew Felder was the only person with a key to the apartment because she "spoke with the property manager." Detective Gerl also testified that Detective DeBiase and the apartment building's manager told him that the apartment was leased to Felder. Both statements were elicited by Felder on cross-examination.
 {¶ 26} Felder may not take comfort from the error he invited. See State ex rel. V. Cos. v. Marshall, 81 Ohio St.3d 467, 471,1998-Ohio-329, 692 N.E.2d 198. The invited error doctrine prohibits a party who induces error in the trial court from taking advantage of such error on appeal. State v. Woodruff
(1983), 10 Ohio App.3d 326, 327, 462 N.E.2d 457. The invited error doctrine is applied when counsel is "actively responsible" for the trial court's error. State v. Campbell,90 Ohio St.3d 320, 324, 2000-Ohio-183, 738 N.E.2d 1178.
 {¶ 27} We find that Felder asked the questions that evoked the testimony which he now claims is error. This is clearly invited error. Moreover, after the testimony was given, Felder did not move to strike the responses. Accordingly, the fourth assignment of error is overruled.
 Judicial and Prosecutorial Misconduct {¶ 28} In his fifth assignment of error, Felder claims that he was denied a fair trial because of judicial and prosecutorial misconduct.
 {¶ 29} "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." State v. Lamar, 95 Ohio St.3d 181, 189,2002-Ohio-2128, 767 N.E.2d 166, citing Rose v. Clark (1986),478 U.S. 570, 577, 92 L.Ed.2d 460, 106 S.Ct. 3101. Judicial bias has been described as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." Id., quoting State ex rel. Pratt v. Weygandt (1956),164 Ohio St. 463, 132 N.E.2d 191, paragraph four of the syllabus.
 {¶ 30} Felder claims that the trial judge was biased against him and his counsel. We find only one instance cited by Felder in which the trial judge's behavior could possibly be viewed as biased.
 {¶ 31} During trial, Felder objected to a question asked of a witness. The court initially overruled the objection and the witness answered. When the witness gave a response favorable to the defense, the court asked Felder whether he wanted to withdraw the objection. Felder responded that he wanted the answer to stand. After some discussion, the court decided to reverse its ruling on the objection. After additional discussion, the court inquired whether Felder still wanted to object to the question. Ultimately, the court ruled that the answer stood as stated. Although there may have been some frustration between the court and defense counsel, this single page of the transcript does not amount to judicial bias, requiring a finding of reversible error or the granting of a new trial.
 {¶ 32} Moreover, Felder has not demonstrated how this alleged bias prevented him from receiving a fair trial. All other instances identified by Felder alleging judicial bias were made outside the presence of the jury, thus there was no opportunity to influence the jury. Viewing the entire proceedings as a whole, we see nothing to suggest that the trial court harbored hostility or ill will toward Felder or his counsel. Accordingly, we cannot say that the trial judge deprived him of a fair trial.
 {¶ 33} Felder also argues that he was denied a fair trial because of various comments made by the prosecutor during opening and closing arguments. Generally, prosecutors are afforded wide latitude in the presentation of their opening statements and closing arguments. State v. Baker, 159 Ohio App.3d 462,2005-Ohio-45, 824 N.E.2d 162.
 {¶ 34} The test for prosecutorial misconduct is "`whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" State v.Hessler, 90 Ohio St.3d 108, 125, 2000-Ohio-30, 734 N.E.2d 1237, quoting State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883. A new trial will be ordered where the outcome of the trial would clearly have been different but for the alleged misconduct.State v. Brewer (June 22, 1995), Cuyahoga App. No. 67782. When applying this test, we consider "the effect the misconduct had on the jury in the context of the entire trial." State v. Keenan
(1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203.
 {¶ 35} Reviewing the alleged inappropriate comments made by the prosecutor during opening and closing arguments, we cannot say that, viewed as a whole, they warrant a new trial. While a few of the comments may have been improper, i.e. asserting that certain elements of the crime were proven beyond a reasonable doubt, they do not rise to the level of substantially impairing Felder's rights.
 {¶ 36} Again, Felder has failed to demonstrate how this alleged misconduct prevented him from receiving a fair trial and how the outcome would have been different but for the alleged misconduct. Moreover, the trial court properly instructed the jury that opening and closing arguments are not evidence and cannot be considered during deliberations.
 {¶ 37} Accordingly, the fifth assignment of error is overruled.
 Discharge and Replacement of Jurors {¶ 38} In his sixth, seventh, and eighth assignments of error, Felder argues that the he was denied his constitutional rights when the court discharged a juror during deliberations and ultimately substituted that juror with a discharged alternate juror.
 {¶ 39} Crim.R. 24(G)(1) provides:
"Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. * * * an alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."
 {¶ 40} In State v. Locklear (1978), 61 Ohio App.2d 231,401 N.E.2d 457, the court held that an alternate juror in a criminal trial, who has been excused, may not be substituted for a regular juror after the jury has retired to consider its verdict. "There is no provision for the substitution of a juror by the alternate during the course of deliberations." Id. at 233.
 {¶ 41} However, in State v. Miley (1991),77 Ohio App.3d 786, 603 N.E.2d 1070, the court held that the substitution of an alternate juror for a regular juror after the jury has retired to consider its verdict is not per se plain error; reversal is required only where there is some showing of prejudice. This court has followed this latter rule. See, State v. Armstrong,
Cuyahoga App. No. 81114, 2002-Ohio-6053.
 {¶ 42} In the instant case, the trial court allowed the alternate jurors to be released after the jury was charged. The court gave the alternate jurors the following instructions:
"You're instructed not to disclose what your verdict might have been or discuss anything about this case until you've heard a verdict has been announced in open court. * * * You cannot give an opinion as to what your theory of the case is or what witnesses you liked or didn't like to any of the other jurors or anyone until you know a verdict has been reached and announced in open court. * * * But you can't have any discussion about the case at all with the other jurors."
 {¶ 43} The jurors then retired to the jury room to deliberate for approximately one hour. The following day, the jury resumed deliberating. However, Juror No. 5 indicated that she did not wish to continue serving on the jury because she was fearful for her life. She claimed that she recognized one of Felder's friends as a person who rides her bus and that, during trial, he was staring at her, which she found intimidating. After conferring with the parties, and over Felder's objection, the court discharged Juror No. 5 because she stated she could not be fair in rendering a verdict.
 {¶ 44} The court brought the remaining jurors back into the courtroom, explained what had occurred, and asked them whether they could be fair and whether they could restart their deliberations as "if we hadn't had any, fairly and impartially start the whole thing all over." After each juror stated independently that he or she could, the court then addressed the first alternate juror. She affirmatively stated that she could resume her duty and denied that she had discussed the content of the case or her opinion with anyone. The court then replaced Juror No. 5 with the first alternate to the panel and the jury retired to deliberate.
 {¶ 45} We find that the jury had not been deliberating for any great length of time, and they were clearly instructed to begin the deliberations anew. Felder has failed to present any argument indicating that the outcome of the trial would clearly have been different. Therefore, Felder was not prejudiced as a result of the court's decision to discharge Juror No. 5 for cause and replace her with an alternate juror.
 {¶ 46} Felder also argues that the court erred in replacing Juror No. 5 with the second alternate. We note that Felder neither objected nor raised this issue before the trial court when the alternate was reassigned to the jury panel.
 {¶ 47} After the twelve-person jury was selected, the trial court selected two alternate jurors and two possible alternates should the State or Felder pass on either. The transcript differentiates Juror No. 13 and Juror No. 14. A close reading of the transcript reveals that the alternate selected was actually the first alternate and correctly replaced the discharged juror. Although the parties and the court were confused, the trial transcript maintains the distinction. From the transcript, it is clear that the alternate who replaced Juror No. 5 was indeed the first alternate.
 {¶ 48} Finally, Felder claims that he was denied his rights under the Sixth Amendment when the court discharged Juror No. 5.
 {¶ 49} In Sheppard vs. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600, the court discussed the constitutional standard of fairness of an impartial jury:
"Due process requires that the accused receive a trial by an impartial jury free from outside influences. * * * Where there is a reasonable likelihood that the prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity."
 {¶ 50} The constitutional standard is sufficiently satisfied if the juror can lay aside his or her personal impressions or opinions and render a verdict based on the evidence presented in court.
 {¶ 51} In the instant case, it was clear that Juror No. 5 could not be fair or impartial. In fact, she stated she could not be fair and would not consider a guilty verdict because she feared for her life. Therefore, we find that Felder was not denied his Sixth Amendment right to an impartial jury when the court acted within its discretion in discharging Juror No. 5.
 {¶ 52} Accordingly, the sixth, seventh, and eighth assignments of error are overruled.
 Jury Instructions {¶ 53} In his ninth, tenth, eleventh, and twelfth assignments of error, Felder claims that he was denied due process of law and a fair trial when the court failed to give or erroneously gave instructions to the jury.
 {¶ 54} Felder claims that the trial court failed to instruct the jury concerning the evidence of other criminal acts and a prior conviction.
 {¶ 55} Generally, evidence which tends to show that the accused has committed other crimes or acts independent of the crime for which he stands trial is not admissible to prove a defendant's character or that the defendant acted in conformity therewith. State v. Elliott (1993), 91 Ohio App.3d 763, 770,633 N.E.2d 1144; Evid.R. 404. However, Evid.R. 404(B) provides that evidence may be admissible for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of other acts may also be admissible to establish an element of the crime.State v. Smith (1990), 49 Ohio St.3d 137, 139-140,551 N.E.2d 190.
 {¶ 56} In the instant case, Felder cites two statements the prosecutor made during opening arguments in which he mentioned that Felder had been arrested for selling heroin and that he had sold drugs. He claims these statements warranted an instruction to the jury that these other acts are inadmissible to prove that he committed the current offenses.
 {¶ 57} First, these statements were made during opening argument, which the jury was instructed is not evidence. Second, the fact that he was arrested in Lake County for drug trafficking and had heroin and criminal tools in his vehicle was admissible to show plan, scheme, or system of illegally trafficking drugs. He was arrested hours before the officers searched his apartment and found heroin, baggies, razor blades, and a gun. The evidence of other acts was properly admissible under Evid.R. 404(B), and the court did not err in refusing to give a limiting instruction.
 {¶ 58} Felder also claims that the court erred in not giving a limiting instruction that his prior drug trafficking conviction can only be considered as an element of the offense. Felder has failed to identify how this lack of instruction prejudiced him and denied him a fair trial. In fact, because the jury acquitted him of drug trafficking and his prior conviction was for drug trafficking, we conclude that the jury properly considered his prior conviction for its intended purpose. Thus, we find no error.
 {¶ 59} Felder also claims that he was denied due process of law when the court instructed the jury on constructive possession and presumption of knowledge. When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction constituted an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989),44 Ohio St.3d 64, 68, 541 N.E.2d 443. Jury instructions are reviewed in their entirety to determine if they contain prejudicial error.State v. Porter (1968), 14 Ohio St.2d 10, 235 N.E.2d 520.
 {¶ 60} Felder claims that because Ohio law does not define "constructive possession," the court's giving an instruction constituted an unconstitutional amendment of the indictment. He further argues that it was error to instruct the jury that knowledge of illegal goods on one's property is sufficient to show constructive possession.
 {¶ 61} This court rejected identical arguments in State v.Perry, Cuyahoga App. No. 84397, 2005-Ohio-27; State v. Loper,
Cuyahoga App. No. 81878, 2003-Ohio-3213; State v. Fannin,
Cuyahoga App. No. 79991. 2002-Ohio-6312. In State v. Franklin
(May 10, 2001), Cuyahoga App. No. 77385, this court stated:
"On appeal, defendant contends that the concept of constructive possession constituted an improper amendment to the indictment which charged him with possession. However, the Ohio Supreme Court has recognized that, as instructed by the trial court, possession may be actual or constructive. State v. Wolery
(1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351."
 {¶ 62} Moreover, in Perry, supra, this court held that the jury was properly instructed that knowledge of illegal goods on one's property is sufficient to show constructive possession. Reviewing the jury instruction here, we find that the court gave the standard instruction on "constructive possession" that this court has repeatedly upheld. Therefore, we find no error in the court's instruction on constructive possession.
 {¶ 63} Next, Felder claims that he was denied due process of law when the court deviated in its instructions to the jury through extemporaneous comments. In support of his argument, he cites R.C. 2945.10(G), which provides that the jury charge or instruction "shall not be orally qualified, modified, or explained to the jury by the court." Felder argues that the trial court's interjecting comment, summarizing, and asking questions during the jury charge violated his due process rights.
 {¶ 64} Felder fails to cite any authority to support his argument that the court's interjections and explanations violated R.C. 2945.10(G) or his right to due process. Furthermore, we find no authority to support his argument.
 {¶ 65} Nevertheless, we recognize that the trial court did not read verbatim the written jury instructions and the court tended to "ad-lib" a majority of the instructions. Although we find that this practice by the court did not strictly comply with the mandates of R.C. 2945.10(G), we also find that the unbiased interjections did not prejudice Felder. In fact, Felder fails to demonstrate how this deviation from the instructions prejudiced him. The jury was properly instructed on each charge and the relevant law. Moreover, the jury was given the written instructions for its deliberations. Although defense counsel objected to the court's pronouncement of the instructions, at no time did counsel request that the court recharge the jury and simply read the written instructions. The prosecutor stated that she found the examples helpful and that the court substantially followed the jury instruction "script."
 {¶ 66} We find that the court substantially complied with the written instructions. Therefore, we cannot say that the court's deviation prejudiced Felder or violated his due process rights.
 {¶ 67} Finally, Felder claims that he was denied due process of law when the court made a determination of factual issues in its instructions to the jury. He claims that because the court did not repeatedly use the word "allege" or "allegation" to modify "possession," the court precluded the jury from making this factual determination.
 {¶ 68} The court made the following statement to the jury:
"Now, since there's two counties in question, they're accusing him of the possession in Cuyahoga County. The possession was at his apartment. Not the possession that was in the car. Because that was across the county line. That was in Lake County. Everybody follow what possession we're talking about here?"
 {¶ 69} Reviewing the context surrounding these statements, the court was trying to clarify the limited issue before the jury. No determination of factual issues was made by the court. The court properly instructed the jury regarding possession; therefore, we cannot say that this statement prejudiced Felder.
 {¶ 70} Accordingly, the ninth, tenth, eleventh, and twelfth assignments of error are overruled.
 Crim.R. 29 Motion for Acquittal {¶ 71} In his final assignment of error, Felder claims that the trial court erred in overruling his motion for judgment of acquittal.
 {¶ 72} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus:
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 73} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.)
 {¶ 74} Felder was convicted of drug possession, possession of criminal tools, and having a weapon while under disability. He claims that the evidence was insufficient to support his convictions because there was no evidence presented to prove that he "possessed" the heroin, the weapon, or the criminal tools found.
 {¶ 75} Pursuant to R.C. 2952.11, no person shall knowingly obtain, possess, or use a controlled substance. A person is guilty of possession of criminal tools if a person possesses or has under their control a substance, device, instrument, or article with the purpose to use it criminally. R.C. 2923.24. Pursuant to R.C. 2923.13, a person is guilty of having a weapon while under disability if that person unlawfully and knowingly acquired, had, carried, or used a firearm or dangerous ordnance and had been convicted of a drug offense.
 {¶ 76} Possession may be proven by evidence of actual physical possession or constructive possession where the contraband is under the defendant's dominion or control. Statev. Palmer (Feb. 6, 1992), Cuyahoga App. No. 58828. Constructive possession may be proven by circumstantial evidence alone, Statev. Taylor, 78 Ohio St.3d 15, 1997-Ohio-243, 676 N.E.2d 82, but "dominion and control" may not be inferred solely from mere access to the substance through ownership or occupation of the premises upon which the substance is found. R.C. 2925.01(K).
 {¶ 77} In the instant case, police searched Felder's apartment and recovered heroin, a gun, ammunition, money, baggies, and razor blades. The officers testified that Felder was the leaseholder of the apartment, and they recovered mail indicating that Felder lived at that address. Although the gun recovered from the apartment was not registered to Felder, ownership is not required for possession.
 {¶ 78} Viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence exists to support Felder's convictions.
 {¶ 79} Accordingly, the final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J. and Corrigan, J. concur.