JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Michael Gaines, brings this appeal challenging his conviction for rape. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On September 12, 2007, a Cuyahoga County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02(A)(2), and one count of rape in violation of R.C. 2907.02(A)(1)(c). On November 19, 2007, defense counsel filed timely discovery requests, including a motion to preserve and produce substance for independent laboratory analysis at the state's expense, which the court granted. On December 24, 2007, the record reflects a journal entry that indicates "the relevant evidence samples, specifically, the rectal swab (item 1.4) and known standard from Michael Gaines (item 3.1) from BCI I Laboratory number 05-3391 be shipped forthwith with a completed chain of custody (signed and dated) to DNA Diagnostics Center ***."
 {¶ 3} On February 21, 2008, appellant filed a motion in limine to exclude the DNA evidence the state sought to introduce at trial. Appellant argued that because independent testing concluded that no amplifiable DNA was obtained from the evidence sample provided by the state's Bureau of Criminal Investigation, he could not defend against the charges of rape.
 {¶ 4} At the start of trial, appellant again raised the issue from his motion in limine. The trial court rejected the argument, and the case proceeded before a jury on February 22, 2008. *Page 4 
 {¶ 5} The state presented five witnesses, including S.G.[1] ("the victim"), Lyneeda Dobbins, Det. Michael Kovach, Melissa Zielaskiewicz, and Elva Thompson. The following testimony from the victim and her cousin, Dobbins, was adduced at trial.
 {¶ 6} The victim and Dobbins were at Dobbins's residence on May 3, 2005. Three males came to the house after midnight; these males were appellant, whose nickname is "June Bug," a male known only as "Lee Lee," and another unidentified male. The victim and the three males drank shots of Jack Daniels together until approximately 3:00 a.m. The four of them, not including Dobbins, then left the house in order to purchase another bottle of liquor. The victim testified that they stopped at several bars that morning before arriving at Libby's, near 41st Street and Clark, where they drank from about 5:00 a.m. until 5:30 a.m.
 {¶ 7} The victim testified that, although she was "not highly intoxicated at all," she does not remember anything after drinking one shot of Jack Daniels at Libby's. She testified that after she drank the shot, she has no memory of leaving the bar, where she went, or what happened until she woke up later that morning in a bed with Lee Lee. The victim testified that her underwear and pants were off and that she was dressed in someone else's pants, which were several sizes too big for her. *Page 5 
 {¶ 8} The victim testified that she dressed and located appellant in another part of the house. Appellant told her that she had had sex with Lee Lee. She became visibly upset, and she testified she felt ashamed that she had had sex with someone she did not know. She testified that appellant drove her to Dobbins's home.
 {¶ 9} Once at her cousin's home, the victim told Dobbins what had happened to her. Dobbins called 911, and an ambulance transported the victim to MetroHealth Medical Center. Dobbins called appellant on his cell phone. He denied that he had done anything to the victim, but stated that something had occurred between her and Lee Lee.
 {¶ 10} At the hospital, a rape kit was performed on the victim, including vaginal and rectal swabs. Her underwear and pants were placed in an evidence bag. The medical report on the victim stated that she had bruises on her neck and back.
 {¶ 11} Nurse Elva Thompson assisted the doctor who performed the rape kit on the victim. She testified that, although a doctor performed the examination, her role was to collect the swabs and smears and seal them in evidence envelopes.
 {¶ 12} Det. Kovach testified that he conducted the investigation in this case. His investigation led to the identification of appellant as a suspect. Det. Kovach testified that on September 3, 2007, appellant cooperated with police by voluntarily giving four buccal swabs. *Page 6 
 {¶ 13} Melissa Zielaskiewicz, a forensic scientist with the Ohio Bureau of Criminal Identification, testified that semen was present on the victim's clothing and on the vaginal swabs and that seminal fluid, which contains sperm, was present on the rectal swabs in the rape kit. She testified that she was able to make a partial profile on a male. Zielaskiewicz testified that her investigation lead her to conclude that the DNA from the rectal swab matched the DNA from appellant's buccal swab.
 {¶ 14} On February 28, 2007, the jury returned a verdict of not guilty on Count one and guilty on Count two. On the same day, the trial court sentenced appellant to five years in prison.
 Review and Analysis {¶ 15} Appellant filed a timely appeal and raises six assignments of error for our review.
 Sufficiency and Manifest Weight of the Evidence {¶ 16} "I. The prosecution failed to produce sufficient evidence to support the elements of rape, and, as a result, the trial court erred in denying appellant's motion for acquittal and the jury verdict was against the manifest weight of the evidence."
 {¶ 17} Appellant argues that the state failed to present evidence of penetration to sustain a rape conviction; therefore, the trial court erred in denying his Crim. R. 29 motion for acquittal. He also argues that a guilty conviction on the rape charge was against the manifest weight of the evidence. *Page 7 
 {¶ 18} Under Crim. R. 29, a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. "A motion for judgment of acquittal under Crim. R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 18, 23. Thus, the test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. See State v. Bell (May 26, 1994), Cuyahoga App. No. 65356.
 {¶ 19} In State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492, the Ohio Supreme Court set forth the test an appellate court should apply when reviewing the sufficiency of the evidence of support a conviction:
 {¶ 20} "[T]he relevant inquiry on appeal is whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. In other words, an appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Eley (1978), 56 Ohio St.2d 169." See, also, Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct 2781, 61 L.Ed.2d 560.
 {¶ 21} Appellant was found guilty of anal rape, in violation of R.C. 2907.02(A)(1)(c), which states: "(A) (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the *Page 8 
offender but is living separate and apart from the offender, when any of the following applies: *** (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."
 {¶ 22} R.C. 2907.01(A) defines "sexual conduct" to mean "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 23} The crux of appellant's argument is that the state failed to present evidence of penetration. He argues that the DNA sample from the rectal swab may not have been taken from inside the anal cavity, but instead from the buttocks, which would only demonstrate physical contact, not penetration. We disagree.
 {¶ 24} Sperm was found on the rectal swab performed on the victim. By virtue of its definition, a rectal swab is necessarily taken from the rectum, "the comparatively straight, terminal section of the intestine, ending in the anus."[2] *Page 9 
Unlike the anus, which is "the posterior opening of the alimentary canal,"[3] the rectum, as part of the large intestine, is contained within the body. When a healthcare professional performs a "rectal swab," "[a] cotton swab is inserted into the rectum, rotated gently, and removed."[4] When sperm is found on a rectal swab, it indicates that sperm is present inside the rectum, not on the exterior of the body.
 {¶ 25} Furthermore, the state presented evidence that semen was found inside the victim's vagina. This, along with the sperm found on the rectal swab, could allow any rational trier of fact to conclude that sexual conduct had occurred. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence of penetration to satisfy that element of rape.
 {¶ 26} Appellant also argues that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 27} The court in State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 28} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of *Page 10 
the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *** See Tibbs v. Florida (1982),457 U.S. 31, 38, 42." State v. Martin, supra, at 175. Moreover, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra.
 {¶ 29} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court, in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include:
 {¶ 30} "(1) Knowledge that even a reviewing court is not required to accept the incredible as true;
 {¶ 31} "(2) Whether evidence is uncontradicted;
 {¶ 32} "(3) Whether a witness was impeached;
 {¶ 33} "(4) Attention to what was not proved;
 {¶ 34} "(5)The certainty of the evidence;
 {¶ 35} "(6) The reliability of the evidence; *Page 11 
 {¶ 36} "(7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
 {¶ 37} "(8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary."
 {¶ 38} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eley, supra.
 {¶ 39} In our case, the jury heard evidence that the seminal fluid found inside the victim's rectum matched appellant's DNA. The jury also heard evidence that there was semen found in the victim's vagina. This evidence was uncontradicted by the defense. We do not find that a manifest miscarriage of justice occurred because there is no indication the jury lost its way in reaching its verdict.
 {¶ 40} Appellant's first assignment of error is overruled.
 Admissibility of Evidence {¶ 41} "II. The trial court improperly admitted over defense objection the evidence of the rape kit and DNA analysis related to the rape kit, as there was no foundation laid that exhibited a proper chain of custody."
 {¶ 42} In his second assignment of error, appellant argues that the trial court violated Evid. R. 901 by allowing state's evidence, the rape kit, to be admitted without a proper foundation. We disagree. *Page 12 
 {¶ 43} Evid. R. 901(A) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(B) allows for authentication with testimony that a matter is what it is claimed to be by a witness with knowledge.
 {¶ 44} The chain of custody is part of the authentication and identification requirement in Evid. R. 901. State v. Brown (1995),107 Ohio App.3d 194, 200, 668 N.E.2d 514. The prosecution bears the burden of establishing a proper chain of custody. State v. Moore (1973),47 Ohio App.2d 181, 183, 353 N.E.2d 866. However, the state has no duty to eliminate every possibility that tampering or substitution occurred. Id. The state must only show that it is reasonably certain that a substitution, tampering, or alteration did not occur. Id.
 {¶ 45} Chain of custody can be established by direct testimony or by inference. State v. Conley (1971), 32 Ohio App.2d 54, 60,288 N.E.2d 296. The issue as to whether there is a break in the chain of custody is a determination left to the jury. Columbus v. Marks (1963),118 Ohio App. 359, 194 N.E.2d 791. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. Id. State v.Mays (1996), 108 Ohio App.3d 598, 671 N.E.2d 553.
 {¶ 46} In this case, the state produced the results of the rape kit into evidence. The testimony at trial from Nurse Thompson lays the foundation to establish a proper chain of custody. Appellant may only challenge the weight of *Page 13 
the evidence contained in the rape kit, which he does in his first assignment of error; he may not successfully challenge the admissibility of the rape kit itself.
 {¶ 47} Appellant's second assignment of error is overruled.
 {¶ 48} "III. In light of the state's failure to observe timely discovery, admission at trial of evidence of the rape kit and DNA analysis related to the rape kit violated appellant's state and federal rights to due process of law, effective assistance to counsel, and confrontation of the state's evidence against him under the Sixth andFourteenth Amendments to the United States Constitution and Article I, sections 10, 16 and 20 of the Ohio Constitution."
 {¶ 49} In his third assignment of error, appellant argues that his motion in limine to exclude the state's DNA evidence was improperly denied because he was not able to perform independent testing. He argues that he filed the proper discovery motions, but that there was not sufficient biological evidence remaining after the state conducted its testing that would allow additional testing to be performed. We are not persuaded by appellant's argument. *Page 14 
 {¶ 50} Crim. R. 16(B)(1)[5] gives a criminal defendant the right to inspect physical items the state may use as evidence at trial as well as a right to inspect scientific tests. DNA evidence may be admissible if it is relevant to a fact at issue in a case. State v. Pierce,64 Ohio St.3d 490, 1992-Ohio-53, 597 N.E.2d 107, paragraph one of the syllabus. As with other relevant evidence, DNA evidence must be excluded only if its probative value is outweighed by the danger of unfair prejudice or its likelihood to mislead the jury. Id.
 {¶ 51} In this case, appellant made a written demand for a sample of the substance so that he might employ his own expert to conduct a test, and the state complied. There is no evidence that a sample portion could not be preserved, nor is there evidence of spoliation of evidence by the state. Due to the fact that there was an insufficient sample available to test, appellant was unable to conduct an independent test.
 {¶ 52} The state argues that the DNA evidence is admissible, relying on State v. Snyder (Feb. 3, 1999), Summit App. No. 18923. The state correctly notes that the Snyder court held that DNA evidence is admissible when the alleged attacker's *Page 15 
identity is at issue. Id. Yet in Snyder, the defendant never requested independent testing. It is the facts in State v. Williams (Aug. 16, 1991), Lucas App. No. L-90-175, however, which are more like the facts before us.
 {¶ 53} In Williams, the defendant alleged that the trial court erred in admitting evidence of the DNA analysis of blood found on appellant's shoe because appellant did not have an opportunity to have an independent test conducted on the blood sample. Id. "After the test, the shoe was sent to appellant's laboratory where it was determined that insufficient blood was left on the shoe to run a second test. There is nothing in the record of this case to indicate that the state lost or destroyed any portion of the blood sample. The fact is that there was simply not enough blood on appellant's shoe to run a second DNA test." Id. The Williams court affirmed the trial court "because appellant was given access to the test results and copies of all the recorded scientific data that resulted from the DNA analysis. Thus, appellant's independent analyst could arrive at independent conclusions, findings, or opinions concerning the identity of the blood subjected to the DNA analysis," thereby meeting basic due process requirements.
 {¶ 54} Appellant's only argument is that there was not enough biological material in the sample remaining for him to conduct independent DNA testing done after the state completed its testing. He does not suggest the state acted improperly to deny him access to a sample. We are not persuaded that the trial court erred in denying appellant's motion in limine on these facts.
 {¶ 55} Appellant's third assignment of error is overruled.
 Illegal Search — Taking of Samples *Page 16 {¶ 56} "IV. The taking of appellant's DNA and/or blood was an illegal search and violated both the Fourth Amendment to the United States Constitution as well as Article I, section 14, of the Ohio Constitution."
 {¶ 57} In his fourth assignment of error, appellant argues that the blood test[6] and DNA analysis were undertaken without his consent and without individualized suspicion of criminal wrongdoing in violation of his Fourth Amendment rights. This argument challenges the constitutionality of R.C. 2901.07, which requires DNA testing of certain offenders who have been sentenced to incarceration, without regard to their consent or the existence of any reason to believe that they have committed a crime other than the offense for which they have been incarcerated. See State v. Cremeans, 160 Ohio App.3d 1, 2005-Ohio-928,825 N.E.2d 1124.
 {¶ 58} All fifty states have enacted DNA database statutes and courts have almost uniformly held that they do not violate theFourth Amendment. The United States Supreme Court has characterized the drawing of blood as minimally intrusive. "Blood tests do not constitute an unduly extensive imposition on an individual's bodily integrity."Winston v. Lee (1985), 470 U.S. 753, 762, 105 S.Ct. 1611. Furthermore, prisoners and probationers have diminished expectations of privacy.Griffin v. Wisconsin (1987), 483 U.S. 868, 874, 107 S.Ct. 3164;Hudson v. Palmer (1984), 468 U.S. 517, 524-528, *Page 17 104 S.Ct. 3194; In re Nicholson (1999), 132 Ohio App.3d 303, 724 N.E.2d 1217;Pollock v. Brigano (1998), 130 Ohio App.3d 505, 511, 720 N.E.2d 571. A convicted felon's interest in the identifying information contained in his or her DNA is particularly weak when compared with those of other individuals. In the context of law enforcement, the taking of a DNA sample is akin to the taking of a fingerprint and does not unduly infringe on an offender's privacy interests. Nicholson, supra; see, also, Davis v. Mississippi (1969), 394 U.S. 721, 89 S.Ct. 1394,22 L.Ed. 2d 676.
 {¶ 59} As in appellant's case, most of these challenges have been brought as claims for violations of the Fourth Amendment protection against unreasonable search and seizure. Wilson v. Collins
(6th Cir. 2008), 517 F.3d 421. Such Fourth Amendment challenges have been uniformly rejected by the courts, because the government's compelling interests in crime control have consistently been deemed to outweigh the plaintiffs' diminished privacy interests. Id.
 {¶ 60} Likewise, we reject appellant's claim that his Fourth Amendment rights were violated by the state's administration of a blood test and buccal swab. Appellant's fourth assignment of error is overruled.
 Jury Instructions {¶ 61} "V. The trial court erred to the prejudice of appellant when it orally qualified, modified, and explained its written instructions to the jury."
 {¶ 62} In his fifth assignment of error, appellant argues that the trial judge's oral modifications to the jury instructions prejudiced him. We disagree. *Page 18 
 {¶ 63} R.C. 2945.10(G) states: "The court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury. Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case."
 {¶ 64} In State v. Felder, Cuyahoga App. No. 87453, 2006-Ohio-5332, this court held that even though the trial judge did not strictly comply with R.C. 2945.10(G), the defendant failed to demonstrate how he was prejudiced by the modifications. The Felder court also found that the oral modifications made by the judge did not prejudice the defendant, and because the jury was provided with a copy of the written jury instructions during its deliberations, substantial compliance with the written instructions was sufficient. Id.
 {¶ 65} In the case at bar, the trial judge engaged in numerous deviations from the written jury instructions. He explained the historical background of the jury system; he offered hypotheticals for unrelated crimes; he discussed proof of elements of crimes generally; he warned the jury not to be distracted by information that was not admitted at trial or to get caught up with whether they agreed or disagreed with the applicable law. We find that none of these digressions prejudiced appellant. *Page 19 
 {¶ 66} Arguably the only digression that may have confused the jury was the trial judge's purported distinction between sexual conduct and sexual contact.[7] Our review, however, does not demonstrate how appellant was prejudiced. In fact, even appellant argues only that "the comments could therefore have confused and mislead the jury into thinking that a conviction for rape based upon similar types of conduct was permissible." (Emphasis added).
 {¶ 67} We find the trial judge removed any possible confusion by explaining that rape requires evidence of sexual conduct, and that sexual contact was not sufficient for a rape conviction. Since the issue of penetration is the sole issue appellant challenges in his first assignment of error, we believe the trial judge's comments clarify, not muddy, the difference between sexual conduct and sexual contact.
 {¶ 68} Although appellant objected to the oral modifications, he did not ask the court to recharge the jury.[8] We do not find appellant was prejudiced by the *Page 20 
trial judge's extraneous comments. Appellant's fifth assignment of error is overruled.
 Jury Voir Dire {¶ 69} "VI. The trial court erred to the prejudice of appellant by refusing to permit reasonable examination of a prospective juror by defense counsel during voir dire."
 {¶ 70} In his sixth assignment of error, appellant argues that he was prejudiced by the trial court's failure to provide time during voir dire to complete his questioning of a prospective juror. He specifically argues that he was denied his right to determine possible bias by a juror who had been involved in recent criminal proceedings.
 {¶ 71} "Much rests in the discretion of the court as to what questions may or may not be answered, but in practice very great latitude is, and generally ought to be indulged." Dowd-Feder, Inc. v. Truesdell (1936),130 Ohio St. 530, 200 N.E. 762. As such, the scope of the examination during voir dire is within the sound discretion of the trial court, and the judgment will not be reversed absent a showing that the trial court abused its discretion. State v. Jenkins (1984), 15 Ohio St.3d 164,473 N.E.2d 264, certiorari denied (1985), 472 U.S. 1032, 105 S.Ct. 3514,87 L.Ed. 2d 643, citing Pavilonis v. Valentine (1929), 120 Ohio St. 154,157, 165 N.E. 730. "`Abuse of discretion' connotes more than an *Page 21 
error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. When exercising discretion, the trial court should allow reasonable inquiry on any relevant matter which is determinative of the issues of the case. Dayton v. Meyer (Mar. 29, 1991), 2nd Dist. No. 11848, dismissed by (1991), 61 Ohio St.3d 1428,575 N.E.2d 216.
 {¶ 72} During voir dire, Juror No. 23, a 20-year veteran postal worker, revealed that he had pleaded guilty to a misdemeanor charge of theft of government property. Defense counsel was not given time by the trial court to ask questions on this subject. Appellant claims "possible bias" based on Juror No. 23's involvement in federal criminal proceedings. We are not persuaded.
 {¶ 73} When the state was examining this juror, the juror explicitly stated that his experience was "trying," but that he had no hard feelings towards the government and that he was dealt with fairly in the federal system. He also said that he would be a fair and impartial juror.
 {¶ 74} Given the disparity between Juror No. 23's conviction and the offense appellant was accused of, we do not believe appellant was prejudiced by this particular juror's participation on the jury. Appellant has not demonstrated bias or prejudice that would lead this court to find the trial court abused its discretion by limiting defense counsel's questioning.
 {¶ 75} Appellant's sixth assignment of error is overruled.
 Judgment affirmed. *Page 22 
It is ordered that appellee recover of said appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and PATRICIA ANN BLACKMON, J., CONCUR.
[1] The victim is referred to herein by her initials in accordance with this court's established policy.
[2] From Random House, Inc., at website Dictionary.com; http://dictionary.reference.com/browse/rectum; retrieved January 15, 2009.
[3] From Merriam-Webster's Medical Dictionary, at website Dictionary.com; http://dictionary.reference.com/browse/anus; retrieved January 15, 2009.
[4] At website http://www.nlm.nih.gov/medlineplus/ency/article/003759.htm; retrieved January 15, 2009.
[5] Crim. R. 16 (B)(1) states in relevant part: "*** (c) Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant. ***
"(d) Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney."
[6] In actuality, it appears appellant was subject to a buccal swab, whereby a DNA test is performed on cell scrapings from the inside of an individual's mouth.
[7] The trial judge's comments on this point included:
"Somebody mentioned here in their argument sexual contact. I think they said that accidentally. Sexual contact is not sexual conduct. Sexual contact is touching the erogenous zone of another for sexual gratification of the offending person. ***
"Sexual conduct is these various sex acts I just described. Everybody understand the difference? Vaginal intercourse, anal intercourse, the oral sex. And so it takes sexual conduct, not sexual contact. Sexual contact is not rape. Everybody understand the difference between the two?
"I mean, the further example, is if a male walked up to a woman and grabbed her breasts for his own purposes, sexual gratification, did so purposely, not accidentally like on a bus or something, that would be sexual contact. But that is not rape. Everybody understand? It's a different crime altogether if he did it purposely, but it's not the crime in front of you. Everybody understand the distinction? I have to give that to you because somebody used that conduct term earlier. Okay."
[8] The record reflects that appellant objected "to anything additional coming in ***." Appellant also objected after the charge was read, since the trial court refused to permit objections while the charge was being read. *Page 1